ACCEPTED
05-15-00796-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
10/14/2015 8:25:10 PM
LISA MATZ
CLERK

No. 05-15-00796-CV

In The 5th Court of Appeals

Dallas, Texas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
10/14/2015 8:25:10 PM
LISA MATZ
Clerk

Chris Click and Jerry Lindemann

v.

Transport Workers Union Local 556

ON APPEAL FROM THE 116TH CIVIL DISTRICT COURT

DALLAS COUNTY TEXAS

TRIAL COURT CAUSE NO DC-13-13347
JUDGE TONYA PARKER, PRESIDING

APPELLANTS FIRST BRIEF ON THE MERITS OF THE APPEAL

Appellant:
Chris Click
1711 Waltman Road
Edgewood, MD 21040
(410)507-9082

Jerry Lindemann
20802 Phlox Meadow
San Antonio, TX 78259
(210)269-6654

APPELLANTS BRIEF ON THE MERITS - 1

Chris Click, Pro Se
1711 Waltman Road
Edgewood, MD 21040

5TH COURT OF APPEALS FOR DALLAS COUNTY

CHRIS CLICK AND JERRY LINDEMANN,          ) Case No.: 05-15-00796-CV
                                          )
                    Plaintiff(s),         ) APPELLANTS BRIEF ON THE MERITS
                                          )
vs.                                       )
                                          )
TRANSPORT WORKERS UNION LOCAL 556,        )
                                          )
                    Defendant(s)          )
_____ )

BRIEF IN SUPPORT OF THE MERITS OF THE APPEAL

IDENTITY OF PARTIES AND COUNSEL


Appellant/Plaintiff:                     Pro Se

Christopher L Click

1711 Waltman Road

Edgewood, MD 21040

(410)507-9082


Appellant/Plaintiff:                     Pro Se

Jerry Lindemann

20802 Phlox Meadow

San Antonio, TX 78259

(210)269-6654

Original Trial Judge:

Honorable Tonya Parker, Presiding

George L Allen Sr Courts Building

600 Commerce Street, 6th Floor New Tower

Dallas, TX 75202

(214)653-6015


Appellee/Defendant:                        Attorney For Defendant:

Transport Workers Union Local 556          Edward Cloutman

7929 Brookriver Drive Suite 750            3301 Elm Street

Dallas, TX 75247                           Dallas, TX 75226

TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………………………………………..2

TABLE OF CONTENTS…………………………………………………………………………………….4

TABLE OF AUTHORITIES……………………………………………………………………………..5

STATEMENTS OF THE CASE……………………………………………………………………………6

STATEMENT REGARDING ORAL ARGUMENTS………………………………………………………7

ISSUES PRESENTED……………………………………………………………………………………..8

STATEMENT OF FACTS………………………………………………………………………………9

ARGUMENT…………………………………………………………………………………………………11

PRAYER…………………………………………………………………………………………………..14

APPENDIX OF EXHIBITS………………………………………………………………………..16

CERTIFICATE OF SERVICE……………………………………………………………………….19

INDEX OR TABLE OF AUTHORITIES

1. American Bank v. Waco Airmotive Inc., 818 S.W.2d 163, 178 (Tex. App. - Waco 1991, writ denied).

2. Dawson Austin v. Austin, 968 S.W.2d 319 (Tex. 1998).

3. Gabauer, et al v. Woodcock, et al., 425 F.Supp 1, 2 (E.D. Missouri 1976)

4. *Holdeman v.Sheldon*, 311 F.2d 2, 3 (2nd Cir. 1962)

5. Kerr v. Shanks, 466 F.2d 1271, 1277 (9th Cir. 1972).

6. Larrumbide v. Doctors Health Facilities, 734 S.W.2d 685, 693-94 (Tex. App. - Dallas 1987, writ denied).

7. L.M. Healthcare, Inc. v. Childs, 929 S.W.2d 442, 443 (Tex. 1996).

8. McNamara, et al v. Johston, et al., 522 F.2d41157, 1167 (7th Cir. 1975)

9. Mulligan v. Parker, 805 F.Supp 592, n. 4 (ND Illinois 1992)

10.      Texas Educ. Agency v. Maxwell, 937S.W.2d 621, 623 (Tex. App. - Eastland 1997, writ denied);

STATEMENTS OF THE CASE

1. On November 8th, 2013, Defendant Transport Workers Union Local 556, through their attorney Edward Cloutman filed a civil action against Christopher Click and Jerry Lindemann in the 116th Civil Ciruit Court seeking damaged and other relief pertaining to Click and Lindemann's service as Officers in the Local Union.

2. On February 2nd, 2014, Attorneys for Lindemann and Click filed a motion to Consolidate the case into a third open case against Stacy Martin who was also being sued in the 116th court for damaged.

3. Chris Click served as the Vice President on the Executive Board for Transport Workers Union Local 556 from May 2012 through May 2013. Jerry Lindemann also served on the Executive Board for Transport Workers Union Local 556 from May 2012 through May 2013.

4. The Motion to Consolidate was not opposed by TWU Local 556 or their counsel Edward Cloutman and as such were combined into action number DC-13-13347 (TWU Local 556, v. Stacy Martin, et al)

5. On November 26th, 2014 Attorney Dan Nelson (attorney for Click and Lindemann) filed a Traditional AND No Evidence Motion for Summary Judgment and requested a hearing to present oral arguments on said motion.

6. On December 16th, 2014, Attorneys for TWU Local 556 filed their opposition to Click and Lindemanns Motion for Summary Judgment.

7. After Oral Arguments from both parties regarding the Motion for Summary Judgment, Judge Tonya Parker ruled on motion GRANTING Click and Lindemann's No Evidence and Traditional Summary Judgment and exluded them from the Jury Trial set to begin three days later.

8. Defendant TWU Local 556 Did not Appeal the decision of the trial judge within thirty (30) days of the decision of the court which means the judgment GRANTING the Motion for Summary Judgment is FINAL.

9. On January 29th, 2015 the Jury Trial in the matter of TWU Local 556 v. Stacy Martin, et all proceeded in the 116th Circuit Court with Honorable Judge Tonya Parker Presiding. After three days of testimony and hours of deliberations the courts returned a guilty verdict against Stacy Martin and awarded TWU Local 556 monetary damages.

10. Judge Parker signed a final judgment on February 19th, 2015. Ordering that Stacy Martin pay TWU Local 556 monetary damages and that TWU Local 556 take nothing from Click and Lindemann.

11. On March 3rd, 2015 Attorneys for Click and Lindemann filed a Motion to Modify Judgment as a final award decision for the Motion for Summary Judgment had not been addressed in the final ruling.

12. On June 3rd, 2015 the Honorable Judge Tonya Parker signed an amended Final Judgment regarding TWU Local 556 v. Stacy Martin, however had still not addressed the Motion for Summary Judgment and ultimately the dismissal of the case against Click and Lindemann.

13. On July 1st, 2015, Chris Click and Jerry Lindemann both Pro Se filed a Notice of Appeal with the 116th Circuit Civil Court and it was submitted on the same day to the 5th Court of Appeals. Case was assigned number 05-15-00796-CV

STATEMENTS REGARDING ORAL ARGUMENTS

1. Plaintiff Chris Click and Jerry Lindemann do not feel the presentation of Oral Arguments will aid the appellate courts decision in the matter, nor are oral arguments appropriate.

APPELLANTS BRIEF ON THE MERITS - 7

ISSUES PRESENTED

1. Did the Trial Court err in the final judgment by excluding awards for both Click and Lindemann in regards to the GRANTING of a Motion for Summary Judgment?

2. Is there factually sufficient case law and evidence to support the judgment in the trial court and again in the appeals court?

3. Are Click and Lindemann entitled to attorney fees and other relief as decided by the court and filed in the Original Motion for Summary Judgment?

4. Are Click and Lindemann entitled to a portion of relief as decided by the appellate court based on the Original Motion for Summary Judgment and the decision of the judge in her final judgment against Martin in DC13-13347?

5. Did Click and Lindemann file in a timely manner and in accordance with Texas Procedural Law their Motion to Modify Judgment?

6. Is there a long standing practice that shows a history and policy of "permitting union officers who have successfully defended themselves against charges of 501 of the LMRDA, wherein there is an adequate protection of union officers from baseless litigation"?

7. Is there case law in place "Permitting a union to reimburse a defendant if he is successful in his defense, and in which provides sufficient financial protection of union officials against nuisance suits."?

STATEMENT OF FACTS

1. In March 2012, Chris Click and Jerry Lindemann were elected to serve as Vice President and Treasurer of Transport Workers Union Local 556. Click and Lindemann ran on a slate with three others (Stacy Martin/President, Dawn Wann/2nd Vice President, and Jannah Dalak/Recording Secretary). During their first year in office Click and Lindemann were presented with charges no fewer than six times. During that time the board found the charges improper.

2. In November 2012, when Martin, Click and Lindemann had discovered that several Executive Board Members had been claiming work on their time sheets and being paid for that work, without the work actually being done, Martin made a move to slash the budget for these officers and refused to pay time sheets for work that could not be verified of being completed. Many board members were upset by these decisions.

3. In January and February of 2013 during normally scheduled Membership Meeting, Click and Martin shared the financial findings with members of the local during routine question and answer sessions regarding financial expenditures. The Board Members who had taken part in the pay schemes were upset about this decision and considered Martins actions "harmful to them as members"

4. The Executive Board moved to present charges against Click, Martin and Lindemann and in April 2013, May 2013 and again in June 2013 found Stacy Martin, Chris Click and Jerry Lindemann guilty of various articles of the Constitution and Bylaws of the Local. They

were removed from office and restricted from holding elected or appointed office for a period of three additional years.

5. In November 2013, TWU Local 556 presented civil actions separately against Stacy Martin, Chris Click and Jerry Lindemann for the costs incurred during trials and expenses incurred after their removal from office (during suspension and after being removed).

6. In November 2014, Attorneys for Chris Click, Stacy Martin and Jerry Lindemann filed Motions for No Evidence and Traditional Summary Judgment to the courts. December 2014, TWU Local 556 filed their oppositions to motion and both motions were set for oral arguments after the Holiday break.

7. In January 2015 attorneys for both parties presented oral arguments in the 116th Circuit Court regarding the Motions for Summary Judgment. The Court GRANTED in WHOLE the Motion for Summary Judgment for Click and Lindemann and DENIED the Motion for Summary Judgement for Martin. Stacy Martin proceeded to jury trial three days after.

8. In January 2015, the jury trial for Stacy Martin proceeded and Martin was in the end found guilty of the charges against him. Martin was not found guilty of the charges against Click and Lindemann.

9. In February 2015 the Trial Judge Parker issued her final judgment and did not issue a signed final ruling for CLICK and LINDEMANN's Motion for Summary Judgment.

10. In March 2015, Attorneys for Click and Lindemann filed a Motion to Modify Judgment seeking the honorable Parker to sign her oral ruling of the Motion for Summary Judgment.

11.  In June 2015, the Honorable Parker issued an amended ruling in the matter of TWU Local 556 v. Stacy Martin however still failed to address the Motion for Summary Judgment.

12.  In July 2015, Click and Lindemann filed (pro se) their Notice to Appeal the decision of the trial court due to the fact a decision had not been rendered in the final award for Click and Lindemann. Appellant has appealed their case to the 5th Court of Appeals at Dallas County, Texas asking the appellate court to modify the courts final judgment.

ARGUMENT

1.  If the judgment did not award a party all the relief it was entitled to, or awarded the other party more relief than it was entitled to, the complaint must be brought to the attention of the trialcourt in a written motion. Tex. R. Civ. P. § 329b(g). A party should file a motion to modify the judgment if the court did not award the correct amount of prejudgment interest. If a party does not bring the issue to the attention of the trial court in a motion to modify the judgment or make some other objection that appears on the record, the party cannot raise the issue on appeal. Larrumbide v. Doctors Health Facilities, 734 S.W.2d 685, 693-94 (Tex. App. - Dallas 1987, writ denied).

2.  A party should file a motion to modify the judgment when the trial court does not award attorneys fees or does not award the correct amount of fees. Texas Educ. Agency v. Maxwell, 937

S.W.2d 621, 623 (Tex. App. - Eastland 1997, writ denied); American Bank v. Waco Airmotive Inc., 818 S.W.2d 163, 178 (Tex. App. - Waco 1991, writ denied).3

3. A party should file a motion to modify the judgment when the judgment does not award costs, awards costs to the wrong party, or does not award the correct amount of costs. Dawson Austin v. Austin, 968 S.W.2d 319 (Tex. 1998). A party should file a motion to modify the judgment if there is any other error in the judgment. L.M. Healthcare, Inc. v. Childs, 929 S.W.2d 442, 443 (Tex. 1996). On July 14, 2014,

4. Defendants Click and Lindemann filed their No-Evidence Motion for Summary Judgment praying this Honorable Court grant their Motion and requested relief, both special and general, at law and in equity. On November 26, 2014, Defendants filed their Traditional Motion for Summary Judgment praying this Honorable Court to grant their Motion, and pray and requested relief for Attorneys Fees, costs of court, pre and post judgment interest and any other relief they may so justly be entitled to in law or equity.

On January 22, 2015, this Honorable Court GRANTED Defendants Click and Lindemann's Motions for Summary Judgment; however, no Order or Judgment has been entered as to the relief requested by Defendants Click and Lindemann, and that of which they are entitled.

Moreover, there is long standing precedence that shows a history of policy "permitting union officers who have successfully defended themselves against charges of § 501 of the LMRDA, wherein there is an adequate protection of union officers from baseless litigation." Kerr v. Shanks, 466 F.2d 1271, 1277 (9th Cir. 1972).

Citing Holdeman v. Sheldon, where the 2nd Circuit originally held that there is a policy in place "permitting a union to reimburse a Defendant if he is successful in his defense…[which] provides sufficient financial protection of union officials against nuisance suits." Holdeman v.Sheldon, 311 F.2d 2, 3 (2nd Cir. 1962); See also, McNamara, et al v. Johston, et al., 522 F.2d4 1157, 1167 (7th Cir. 1975)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); See also, Gabauer, et al v. Woodcock, et al., 425 F.Supp 1, 2 (E.D. Missouri 1976)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); See also, Mulligan v. Parker, 805 F.Supp 592, n. 4 (ND Illinois 1992) quoting Holdeman ("The policy of permitting the union to reimburse the officers for successful defense provides sufficient financial protection of the officers against harassing lawsuits.")

5.  Therefore, Defendants Click and Lindemann are entitled to the relief requested, and move this Honorable Court to modify the Judgment in this matter to award for the said relief of which they are so justly entitled.

6.  The Appellee Will ARGUE that the costs would have been incurred for Martin regardless and because he was found guilty they are not liable for the defense of CLICK and LINDEMANN, but in fact CLICK and LINDEMANN had their cases dismissed by the honorable court and were

not tried by jury.  As such the resulting trial against MARTIN has no bearing on the matter of law listed in this appeal.  Further, the affidavit attached from attorney Dan Nelson lists fees due by Click and Lindemann only and the fees for Martin are much greater than listed above.  Collectively the three clients in the original trial has spent in excess of $120,000 and are continuing to acquire debt on the matter due to still unpaid invoices due to our attorney.  In the matter above, the listed amount found in the prayer section provides for the money owed by CLICK AND LINDEMANN only and is shown in the affidavit listed in the APPENDIX.

PRAYER

1. This Honorable Court enter Order of Judgment GRANTING Defendants Click and Lindemann's No-Evidence and Traditional Motions for Summary Judgment.

2. Defendants CLICK and LINDEMANN be entitled to pre and post judgment interest accruing at a rate of 5%.

3. Defendants CLICK and LINDEMANN be entitled to all court costs attributable to each of them.

4. Defendants CLICK and LINDEMANN be entitled to their uncontested reasonable attorneys fees. ("See attached Exhibitsof Defendants

Traditional Motion for Summary Judgment - Defendants' Uncontested Affidavit for Attorneys' Fees").

E. Defendants CLICK and LINDEMANN request and pray for any other and further relief of which they may so be justly entitled.

WHEREFORE, premises considered, Defendants CHRIS CLICK and JERRY LINDEMANN pray this Court GRANT their Motion for Modification of Judgment, and award them all relief herein requested of which they are so justly entitled, and for any other and further relief that this Honorable Court may deem appropriate

APPENDIX OF EXHIBITS

Chris Click, Pro Se
1711 Waltman Road
Edgewood, MD 21040

5TH COURT OF APPEALS FOR DALLAS COUNTY

CHRIS CLICK AND JERRY LINDEMANN,   ) Case No.: 05-15-00796-CV
                                   )
               Plaintiff(s),   ) ORDER GRANTING APPEAL AND FINAL
                                   ) JUDGMENT
vs.                               )
                                   )
TRANSPORT WORKERS UNION LOCAL 556,   )
                                   )
               Defendant(s)   )
_____ )

**FINAL JUDGMENT**

This Honorable Court having considered all the pleadings, evidence, and arguments herein is of the opinion that Defendants' CHRIS CLICK and JERRY LINDEMANN's Motion to Modify should be GRANTED.

Therefore, it is ORDERED, ADJUDGED and DECREED that Final Judgment is awarded to Defendants CHRIS CLICK and JERRY LINDEMANN, as follows:

(A). Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all pre and post judgment interest accruing at a rate of 5%.

(B). Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all costs of the court of which are attributable to each Defendant in the amount of $_____.____

(C). Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to their uncontested attorneys fees in the amount of Forty Four Thousand Three Hundred Seventy-One Dollars and nineteen cents ($44,371.19).

_____
JUDGE PRESIDING

APPELLANTS BRIEF ON THE MERITS - 16

**CAUSE NO. DC-13-13347**

| | | |
|---|---|---|
| **TRANSPORTATION WORKERS** | § | **IN THE DISTRICT COURT OF** |
| **UNION LOCAL 556 ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **STACY MARTIN, CHRIS CLICK,** | § | |
| **AND JERRY LINDEMANN** | § | |
| | § | |
| **Defendants.** | § | **116th JUDICIAL DISTRICT** |

## DEFENDANTS' MOTION FOR TRADITIONAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

COMES NOW, DEFENDANTS STACY MARTIN, CHRIS CLICK and JERRY LINDEMANN, and files this, their Traditional Motion for Summary Judgment pursuant to Texas Rules of Civil Procedure 166a(c). Defendants would respectfully show unto this Honorable Court the following:

### I.

### INTRODUCTION

On November 8, 2013, Plaintiff, Transport Workers Union, 556 ("TWU") sued Defendants Stacy Martin, Chris Click and Jerry Lindemann individually in Dallas County District Court. Defendant Martin's case was assigned cause number DC-13-13347, and was filed in the 116th Judicial District. Defendant Lindemann's case was assigned cause number DC-13-13348, and was filed in the 192nd Judicial District. Defendant Click's case was assigned cause number DC-13-13350, and was also filed in the 116th Judicial District. On February 14, 2014, Defendants filed a Motion to Consolidate, and on May 15, 2014, all three cases were Ordered consolidated under Defendant Martin's cause number, which is the above cited caption.

1

Specifically, Plaintiff TWU sued Defendant Martin for alleged causes of action of (1) Misappropriation of Union Funds – Breach of Fiduciary Duty, and (2) Conversion of Union Property. Further, Plaintiff TWU also sued Defendants Lindemann and Click for alleged Misappropriation of Union Funds – Breach of Fiduciary Duty.

Defendants individually filed their Answers, and generally denied all claims and allegations as lawfully allowed pursuant to Texas Rule of Civil Procedure 92. Further, Defendants individually filed affirmative defenses of abuse of process, negligence, mitigation, waiver, estoppel and frivolous suit.

Defendants now move for traditional summary judgment based on Plaintiff TWU's lack of evidence to support its causes of action in this matter, and their inability to demonstrate any genuine issue of material fact that exists and is in dispute. Defendants are entitled to summary judgment because Plaintiff TWU has had an adequate time for discovery, and cannot demonstrate that there is any evidence to support their causes of action as plead against Defendants.

## II.

## BACKGROUND

The allegations asserted by Plaintiffs arise from a detailed history amongst both sides. In 2011, the then active/current top officers of the TWU Local 556 Executive Board ("Plaintiffs") consisted of the following:

| | |
|---|---|
| President: | Thom McDaniel |
| 1st Vice-President: | Michael Massoni |
| 2nd Vice-President: | Stacy Martin |
| Secretary: | Cuyler Thompson |
| Treasurer: | John Parrott |

("*Defendant's Exhibits 1- 3 - Affidavits of Defendants Martin, Lindemann and Click*")

2

Prior to the 2012 elections, Thom McDaniel, then Board President, made it known to the Local 556 that he would not seek re-election as president, as he was taking a position with the International Union. ("*id*"). Also, Michael Massoni made it known that he too would not seek re-election. ("*id*"). Moreover, at the same time, Defendants Martin, Lindemann and Click ("Defendants") were making it known of their intention to run for the top officers spots. ("*id*").

Specifically, Defendant Click made it known he was running for 1st Vice-President, ("*Defendant's Exhibit 3*"). Defendant Martin made it known he was running for President, ("*Defendant's Exhibit 1*"), and Defendant Lindemann made it known he was running for Treasurer. ("*Defendant's Exhibit 2*"). The then current Executive Board all knew of Defendants' intention of running for office. ("*Defendants Exhibits 1, 2 and 3*").

In 2012, two groups of candidates ran for the top officer positions, which consisted of the following:

Lauck Group:

| President: | Allyson Parker Lauck |
|---|---|
| 1st Vice-President: | Audrey Stone |
| 2nd Vice-President: | Brett Nevarez |
| Secretary: | Cuyler Thompson (re-election) |
| Treasurer: | John Parrott (re-election) |

Martin Group:

| President: | Stacy Martin |
|---|---|
| 1st Vice-President: | Chris Click |
| 2nd Vice-President: | Dawn Wann |
| Secretary: | Jannah Dalak |
| Treasurer: | Jerry Lindemann |

("*Defendants Exhibits 1, 2 and 3*").

Thom McDaniel made it abundantly clear that his allegiance for replacement was with the Lauck Group. ("*id*").

3

In March of 2012, elections were held and the Martin Group won the election with a vote of 65%. ("*id*"). The new board members were set to take over on May 1st, 2012. ("*id*").

In the preceding months before the turnover, as was standard and necessary, then current board members were required to aid in the transition of the newly elected officers. ("*id*"). This consisted of training, transferring information, and essentially, getting them up to speed and making the transition as smooth as possible. ("*id*"). However, during this time period, while still acting President, Thom McDaniel instructed the other then current board members to deny the newly elected officers from entering the union office. ("*id*"). This was done solely to stifle the transition and make it as difficult as possible for the newly elected members to transition into their new positions. ("*id*").

Almost immediately after taking office in May of 2012, members of the Lauck Group including Allyson Parker Lauck, Cuyler Thompson, Brett Nevarez, as well as other members supporting the Lauck Group, including Audrey Stone's boyfriend Kevin Schnittiker and Don Shipman embarked on a systematic dismantling of the union's electoral system and democratic structure by filing a barrage of unfounded charges against the newly elected officers simply as a means to harass and disrupt the union's infrastructure and business. ("*id*").

Members and supporters of the Lauck Group made it well known that they were going to do everything they could to get the Martin Group removed from office. ("*id*"). On no less than five times subsequent to the Martin Group taking over did Cuyler Thompson submit unfounded charges simply to harass the Martin officers in an attempt to undermine the electoral system and disrupt the basic democratic structure by doing everything he could no matter what to remove them from office and have himself reinstated. ("*id*").

4

On no less than four times subsequent to the Martin Group taking over did Allyson Parker Lauck submit charges against the Martin Group simply to harass and undermine the electoral system and disrupt the union democratic infrastructure. ("*id*").

In November of 2012, a required audit of the union financials had revealed that several of the board members had been paid excessive amounts of money for work that was unverified. ("*id*"). Subsequently, in December 2012 during the Executive Board Meeting, Defendant Martin as president outlined and proposed immediate changes. ("*Defendant's Exhibit 1*"). The changes Defendant Martin installed were to modify the future payouts to reduce the expenses. ("*id*"). Defendant Martin was acting to protect the treasury and limit board pay, which during the board meeting, Defendants revealed through a slideshow these expenses had increased for some board members by 190% in one year. ("*id*").

Seizing another opportunity, members of the Lauck Group submitted false accusations and charges that the Defendants were maliciously spreading false information. ("*Defendants' Exhibits 1- 3*"). However, the audit clearly verified the information put forth in the December meeting, and further, the information being revealed was in fact not confidential and public information for all members. ("*id*").

Subsequently, Cuyler Thompson, at this time only a union member, filed charges with the Recording Secretary Board Member Jannah Dalak, alleging that Defendants Lindemann and Click "conducted themselves in a manner unbecoming a Member of our Union and in violation of the TWU International Constitution and Local 556 Bylaws." ("*Defendant's Exhibit 4 - Thompson's Charges Against Lindemann and Click*").

Also, around this time in March of 2013, Defendant Click attended a rally in Washington DC to protest the TSA change of allowing knives to pass through security checkpoints and be

allowed on commercial aircraft. ("*Defendant's Exhibit 3*"). Defendant Click attended this rally to protest the change. ("*id*"). He was not there in any official capacity as Vice-President, but simply as member of Local 556 voicing his opposition. ("*id*").

During this rally, Defendant Click was carrying a sign that read "Ain't nobody got time for dat." ("id"). Another member of the union, Ms. Corliss King Hale, who attended the rally, and was a supporter of the Lauck Group, reported the sign to the Local 556, wherein again members of the opposition saw an opportunity to submit charges against Defendant Click for alleged misconduct. ("*id*"). Charges of racial discrimination were submitted against Defendant Click based on the sign being allegedly offensive. ("*id*").

Defendant Click was then suspended from his role as 1st Vice President, and was banned from acting in any capacity whatsoever as 1st Vice President. ("id").

Thereafter, during the April 2013 TWU Local 556 Executive Board Meeting, the Executive Board reviewed the charges brought by Thompson and King Hale against Defendants Lindemann and Click and "found them proper, requiring that trial be held." ("*Defendant's Exhibit 5 - Certified Letter from Plaintiff to Lindemann; Defendnat's Exhibit 6 - Certified Letter from Plaintiff to Click*"). Subsequently, on April 30th, 2013, Recording Secretary Jannah Dalak sent certified letters to Defendants Lindemann and Click informing them that charges have been found proper against them, and trials will be held. ("*id*").

Further, the certified letters to Defendants Lindemann and Click regarding the Thompson charges stated, "The Executive Board has selected Flight Attendants Carissa Orr, David Weber, Michelle Ryder to serve on the trial committee." ("*Defendants Exhibit 5*"). Also, the certified letter to Defendant Click regarding the King Hale charges stated, "The Executive Board has

6

selected Flight Attendants Sharon King, Ryan Rodney and Javier Pedraza to serve on the trial committee." ("*Defendant's Exhibit* 6").

Further, the certified letters indicated that the accused Defendants Lindemann and Click "may challenge any Member of this Committee on the grounds that he/she is a party to or directly interested in the charges against you. Any such challenge must be made to the Executive Board by May 8, 2013." ("*Defendants' Exhibits 5 and 6*").

The certified letters also informed Defendants Lindemann and Click that they had until May 8, 2013 to challenge any Member of the Trial Committee. ("*id*"). And finally, the certified letters informed Defendants Lindemann and Click that their Trial Committee Hearings were scheduled for Defendant Click on the 14th of May 2013 (King Hale charges) and the 15th of the May 2013 (Thompson charges), and for Defendant Lindemann on the 15th of May 2013 (Thompson charges). ("*id*").

On May 8, 2013, Defendant Click sent an email to the Executive Board challenging the Members of the Trial Committee. ("*Defendants' Exhibit 3; and Defendants' Exhibit 7 - Click Email to the Executive Board*"). Defendant Click challenged two members of Plaintiff's trial committee on the basis that they signed a petition to recall him from his position as 1st Vice President, as well as challenges to Mark Hattoon, Jeff Haley and Milton Matthews (alternates). ("*id*"). Defendant Click's challenges were denied. ("*id*").

Defendant Click arrived in Dallas on Monday May 13th, the day before his hearings, which were set by Plaintiff for the 14th and 15th of May 2013. Upon arrival, Oakland Based representative Matt Hettich informed Defendant Click, for the first time, through email, that his hearings were rescheduled. ("*Defendant's Exhibit 3; Defendant's Exhibit 8 - Verified Transcript of the May 15th, 2013 Trial Committee Hearing for Click and Lindemann (pgs. 7-9*"). Defendant

Click consulted with President Defendant Martin, and Defendant Martin informed Defendant Click that his hearings were in fact moving forward and that he believed Hettich had no authority to cancel the hearings. ("*Defendants' Exhibits 1, 3 and 8*").

Defendant Click's May 14th Trial Committee Hearing went forward as set by Plaintiff in front of Plaintiff's personally selected Trial Committee Members. ("*Defendants' Exhibit 1 and 3*"). Defendant Click had no say in whether to continue the Trial Hearing on the 14th, or postpone the Hearing. ("*Defendant's Exhibit 1 and 3*"). Defendant Click was told to show up for the Trial Committee Hearing on the 14th, specifically scheduled by the Plaintiff, as well as told to him by Local Union President Defendant Martin. ("*Defendants' Exhibits 1 and 3*").

Both Defendants Lindemann and Click attended their Trial Committee Hearings on May 15th, 2013, as scheduled by Plaintiff. That morning of the Trial Committee Hearing on the 15th, around 9:00 a.m., two Executive Board members, Jimmy West and Addie Crisp, interrupted the proceedings informing the Committee that the trial had been rescheduled. ("*Defendant's Exhibit 2, 3 and 8*"). This was the first time Defendant Lindemann had ever been informed that his trial was allegedly rescheduled. ("*Defendants' Exhibits 2 and 8*").

The Trial Committee deliberated amongst themselves on whether the Trial Committee Hearing should stop, or continue as scheduled. ("*Defendants' Exhibit 8*"). After consideration, the Trial Committee Members decided that there was no authority to postpone the Hearing, and they themselves chose to continue the proceedings. ("*Defendants' Exhibit 8*"). Defendants Lindemann and Click had no say whether to continue or postpone the Trial Committee Hearings against them. ("*Defendants Exhibits 2, 3 and 8*").

Ultimately, Members of the Local 556 Executive Board contacted Defendant Martin on May 13th, 2013, and insisted that he delay the May 14th and 15th 2013 hearings for Defendants

Lindemann and Click. ("*Defendant's Exhibit 1*"). However, Defendant Martin could not reschedule the Hearings because he believed the Constitution for the Transportation Workers Union of the AFL-CIO ("TWU Constitution") proscribed only two instances underwhich Article XIX and Article XXI hearings may be rescheduled; (1) if the claimant removes the charges; or (2) the accused successfully challenges the impartiality of a member(s) of the Trial Committee. ("*Defendant's Exhibit 9 - TWU Constitution*"). Neither of these instances occurred. ("*Defendant's Exhibit 1 and 9*"). Defendant Martin, as President believed rescheduling the Click and Lindemann trials from May 14th and 15th, 2013 to May 22nd and 23rd, 2013, would have required him to violate the clear terms of the Constitution. ("*Defendants' Exhibits 1 and 9*").

Thus, the Trial Committee Hearings for Defendants Lindemann and Click went forward as scheduled by Plaintiffs on the 14th and 15th of May 2013. ("*Defendants Exhibits 1*-8"). Every single party to the Hearings showed up as scheduled by Plaintiffs, including the court reporter, the union attorney, counsel for Defendants, Defendants' witnesses, and the trial committee members selected by the Union's Executive Board. (*"Defendants Exhibits 1-8"*). The only individuals not to show were Plaintiffs, or the accusers. ("*Defendants Exhibits 1, 2, 3 and 8*").

The Trial Committee Members found Defendants Lindemann and Click Not Guilty on all charges. ("*Defendants' Exhibit 10 - Trial Committee Findings for May 15th*"). Despite the Not Guilty findings in the May 14th and 15th Trial Committee Hearings, Plaintiff not satisfied with the outcome, took it upon themselves to set up new Trial Committee Hearings for Defendants Lindemann and Click for the charges against them. ("*Defendants' Exhibits 1, 2, 3, 9; Defendants' Exhibit 11 - Correspondence dated 5/16/2013 from Cuyler Thompson*").

Thus, Defendants Lindemann and Click's Trial Committee Hearings from the 14th and 15th of May were rescheduled to the 24th of May, 2013. ("*Defendants' Exhibit 11*"). Defendant

9

Click requested that Plaintiffs set a new date for the Second Trial Committee Hearing as he indicated it was impossible for his witnesses to return for the new hearing on short notice, and that his counsel was unavailable on such short notice as well for a re-trial. ("*Defendants' Exhibit 3*"). Plaintiff Click's request for a continuance was denied, and subsequently he requested the board provide him with Positive Space Air Transportation to the new trials, which is required and standard for him to attend the Second Trial Committee Hearings; however, Plaintiff denied him this request. ("*Defendants' Exhibit 3*").

Shortly after the May 15th Trial Committee Hearing, Defendant Lindemann went on approved medical leave from the Union and his employer Southwest Airlines. ("*Defendants' Exhibit 2*"). Defendant Lindemann requested a continuance, as he indicated that due to his medical leave he would be physically unable to attend the unauthorized Second Trial Committee Hearing. ("*Defendants' Exhibit 2; Defendants' Exhibit 12 - Correspondence to Board*"). Plaintiffs denied his request, and proceeded with the Second Trial Committee hearing without him being present. ("*id*").

Ultimately, all three Defendants were removed permanently from their positions on the Executive Board, and banned from running for re-election for three years. ("*Defendants' Exhibits 1-3*"). Several months later, and without exhausting any internal union procedures for discipline as required by their Constitution, Plaintiff filed three separate lawsuits against Defendants for allegedly "misappropriating Union funds - breach of fiduciary duty," and for Defendant Martin "conversion of Union property" (*Defendants' Exhibits 9, 13-15 - Plaintiff's Original Petitions*").

## III.

## FACTS ALLEGED BY PLAINTIFF

**A.      Defendant Lindemann**

Under section V of Plaintiff's Original Petition against Defendant Lindemann, Plaintiff alleges the following:

(1).    "Because of scheduling conflicts and other logistical issues…the aforementioned Article XIX trial [of Defendant Lindemann]…needed to be postponed from its original setting on May 15, 2013. (*Defendants' Exhibit 13; page 3 - §V(10*").

(2).    "As such, the Executive Board directed Defendant [Lindemann] to reschedule the hearing." ("*Defendants' Exhibit 13; page 3 - § V(10)*").

(3).    "Sufficient notice of the need for postponement was given to the Defendant [Lindemann]." ("*Defendants' Exhibit 13; page 3 - § V(10)*").

(4).    "Rather than acknowledge this necessity, the Defendant [Lindemann] insisted on ordering the expenditure of the time and resources necessary for the Article XIX trial to take place on its originally set date(sic) and against the explicit instruction from the Executive Board." ("*Defendants' Exhibit 13; page 3 - § V(10)*").

(5).    "As a result, significant time and money was wasted and the Plaintiff was left to foot-the-bill." ("*Defendants' Exhibit 13; page 3 § V(10)*").

(6).    "Defendant [Lindemann]'s portion of these expenses totaled Two Thousand Four Hundred Eighty-Four Dollars and Ten Cents ($2,484.10)." ("*Defendants' Exhibit 13; page 3 § V(10)*").

(7).    "Plaintiff has repeatedly asked that Defendant [Lindemann] reimburse the Union for his share of all the aforementioned unnecessary and wasteful expenditure of Union resources. Defendant [Lindemann] has repeatedly refused to acknowledge or respond to said demands." ("*Defendants' Exhibit 13; page 4 § V(12)*").

These allegations are taken verbatim from Plaintiff' Original Petition against Defendant Lindemann, and no other facts have been pleaded against Defendant Lindemann. ("*Defendants' Exhibit 13*"). Defendant Lindemann generally and specifically denies each and every allegation.

11

**B.** **Defendant Click**

Under section V of Plaintiff's Original Petition against Defendant Click, Plaintiff alleges the following:

(1). "Because of scheduling conflicts and other logistical issues…the aforementioned Article XIX trial [of Defendant Click]…needed to be postponed from its original settings on May 14-15, 2013. (*Defendants' Exhibit 14; page 3 - §V(10*").

(2). "As such, the Executive Board directed Defendant [Click] to reschedule the hearing" ("*Defendants' Exhibit 14; page 3 - § V(10)*").

(3). "Sufficient notice of the need for postponement was given to the Defendant [Click]." ("*Defendants' Exhibit 14; page 3 - § V(10)*").

(4). "Rather than acknowledge this necessity, the Defendant [Click] insisted on ordering the expenditure of the time and resources necessary for the Article XIX trial to take place on its originally set dates and against the explicit instruction from the Executive Board." ("*Defendants' Exhibit 14; page 3 - § V(10)*").

(5). "As a result, significant time and money was wasted and the Plaintiff was left to foot-the-bill." ("*Defendants' Exhibit 14; page 3 § V(10)*").

(6). "Defendant [Click]'s portion of these expenses totaled Two Thousand Four Hundred Eighty-Four Dollars and Ten Cents ($6,210.26)." ("*Defendants' Exhibit 14; page 3 § V(10)*").

(7). "After the Defendant [Click] was removed from office by virtue of both trials, he refused to vacate his office. Defendant [Click], and others with whom he acted in concert, unlawfully occupied Plaintiff's offices for several days and refused to vacate until explicitly directed to do so by the TWU International President. The costs to Plaintiff deriving from this unlawful siege were Four Thousand Four Hundred Twenty-Two Dollars and Forty Cents ($4,422.40)(Defendant [Click]'s portion of which amounts to Two Thousand Two Hundred Eleven Dollars and Twenty Cents ($2,211.20)." ("*Defendants' Exhibit 14; page 4 - § V(12)*").

(8). "Lastly, Defendant [Click] continued to misuse Union funds when, after his suspension, Defendant [Click] took his wife to London (where TWU International was having a conference) for several days and charged the entire cost of the trip to Plaintiff. ("*Defendants' Exhibit 14; page 4 - § V(13)*").

(9). "Furthermore, representatives of TWU International explicitly warned Defendant [Click] that because of his suspension his attendance at the conference would be wholly unauthorized." ("*Defendants' Exhibit 14; page 4 - § V(12)*")

(10). "The costs to Plaintiff deriving from this knowingly unlawful use of Union funds were One Thousand One Hundred Sixty-Four Dollars and Five Cents ($1,164.05)." ("*Defendants' Exhibit 14; page 4 - § V(12)*")

(11). "Plaintiff has repeatedly asked that Defendant [Click] reimburse the Union for his share of all the aforementioned unnecessary and wasteful expenditure of Union resources. Defendant [Click] has repeatedly refused to acknowledge or respond to said demands." ("*Defendants' Exhibit 14; page 4 § V(10)*").

These allegations are taken verbatim from Plaintiff's Original Petition against Defendant Click, and no other facts have been pleaded against Defendant Click. ("*Defendants' Exhibit 14*").

Defendant Click generally and specifically denies each and every allegation.

## C.     **Defendant Martin**

Under section V of Plaintiff's Original Petition against Defendant Martin, Plaintiff alleges the following:

(1). "Because of scheduling conflicts and other logistical issues…the aforementioned Article XIX trial [of Defendants Click and Lindemann]…needed to be postponed from its original settings on May 13-14, 2013[1]. (*Defendants' Exhibit 15; page 3 - §V(10*").

(2). "As such, the Executive Board directed Defendant [Martin] to reschedule the hearing" ("*Defendants' Exhibit 15; page 3 - § V(10)*").

(3). "Sufficient notice of the need for postponement was given to the Defendant [Martin]." ("*Defendants' Exhibit 15; page 3 - § V(10)*").

(4). "Rather than acknowledge this necessity, the Defendant [Martin] insisted on ordering the expenditure of the time and resources necessary for the Article XIX trial on its originally set dates despite his knowledge that the accusing party would not be able to proceed on that date and against the explicit instruction from the Executive Board." ("*Defendants' Exhibit 15; page 3 - § V(10)*").

(5). "As a result, significant time and money was wasted and the Plaintiff was left to foot-the-bill." ("*Defendants' Exhibit 15; page 3 § V(10)*").

(6). "Defendant [Martin]'s portion of these expenses totaled Two Thousand Four Hundred Eighty-Four Dollars and Ten Cents ($6,210.26)." ("*Defendants' Exhibit 15; page 3 § V(10)*").

---

[1] Defendants believe that Plaintiff's accidentally plead "their original proceedings on May 13-14, 2013" by mistake, as the

13

(7).    "After the Defendant [Martin] was removed from office by virtue of both trials, he refused to vacate his office. Defendant [Martin], and others with whom he acted in concert, unlawfully occupied Plaintiff's offices for several days and refused to vacate until explicitly directed to do so by the TWU International President. The costs to Plaintiff deriving from this unlawful siege were Four Thousand Four Hundred Twenty-Two Dollars and Forty Cents ($4,422.40)(Defendant [Martin]'s portion of which amounts to Two Thousand Two Hundred Eleven Dollars and Twenty Cents ($2,211.20)." ("*Defendants' Exhibit 15; page 4 - § V(12)*").

(8).    "Plaintiff has repeatedly asked that Defendant [Martin] reimburse the Union for his share of all the aforementioned unnecessary and wasteful expenditure of Union resources. Defendant [Martin] has repeatedly refused to acknowledge or respond to said demands." ("*Defendants' Exhibit 15; page 4 § V(10)*").

(8).    "Additionally, Defendant [Martin] has engaged in the unlawful conversion of Union property since being removed from office. Specifically, Defendant [Martin has refused to either return or pay for the laptop computer valued at over Four Thousand two Hundred Seventy-Five Dollars ($4,275.00)." ("*Defendants' Exhibit 15; page 4 - § V(14)*").

(9).    "The Defendant [Martin]'s unlawful appropriation of this valuable piece of Union property has been brought to his attention with a corresponding demand for payment for/or return of said property. Defendant [Martin] has thus far refused to remedy this unlawful conduct, as well. ("*Defendants' Exhibit 15; pages 4-5; § V(15)*").

These allegations are taken verbatim from Plaintiff' Original Petition against Defendant Martin, and no other facts have been pleaded against Defendant Martin. ("*Defendants' Exhibit 15*"). Defendant Martin generally and specifically denies each and everyone of these allegations.

**IV.**

**STATEMENT OF THE ISSUES**

**(1).** Whether any fiduciary relationship existed between Defendant Lindemann and Plaintiff, and if so, whether any fiduciary duty existed when his Article XIX Hearing on May 15th, 2013 was adjudicated.

**(2).** Whether any fiduciary relationship existed between Defendant Click and Plaintiff, and if so, whether any fiduciary duty existed when his Article XIX Hearings on May 14th and 15th were adjudicated.

**(3).** Whether any fiduciary duty existed when Defendant Click allegedly failed to vacate Union offices after being removed from office as 1st Vice President.

**(4).** Whether any fiduciary duty existed when Defendant Click attended an International meeting in London after being suspended from office as 1st Vice President.

**(5).** Whether any fiduciary duty existed between Defendant Martin and Plaintiff when Defendants Lindemann and Click's Article XIX Trial Committee Hearings were adjudicated on May 14th and 15th, 2013.

**(6).** Whether any fiduciary relationship or duty existed when Defendant Martin allegedly failed to vacate Union offices after being removed from office as President.

**V.**

**SUMMARY JUDGMENT STANDARD**

Texas Rule of Civil Procedure 166a, which governs summary judgment practice, permits a party to obtain a prompt disposition of a case involving patently unmeritorious claims and untenable defenses. *Casso v.* Brand, 776 S.W.2d 551, 556 (Tex. 1989). To prevail on a traditional motion for summary judgment asserted under Rule 166a(c) of the Tex. R. Civ. P., a movant must prove that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Tex. R. Civ. P. 166a(c)*.

A party moving for traditional summary judgment on a claim for which it does not bear the burden of proof must either (1) disprove at least one element of the Plaintiff's cause of

15

action, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the Plaintiff's cause. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682 (Tex. App. - Dallas 2000, no pet.).

## VI.

## ARGUMENTS AND AUTHORITIES

In order for a Plaintiff to establish a cause of breach of fiduciary duty, he or she must prove the following elements:

> **(1).    The Plaintiff and Defendant had a fiduciary relationship;**
>
> **(2).    The Defendant breached its fiduciary duty to the Plaintiff; and**
>
> **(3).    The Defendant's breach resulted in
> (a). Injury to the Plaintiff, or
> (b). Benefit to the Defendant.**

*Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex. App. - Dallas 2008, n.p.h.); *Dearing, Inc. v. Spiller*, 824 S.W.2d 728, 733-34 (Tex. App. - Fort Worth 1992, writ denied).

To prove an action for breach of fiduciary duty, the Plaintiff <u>must</u> establish that Defendant was the Plaintiff's fiduciary. *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 788 (Tex. App. - Dallas 1990), *writ denied*, 803 S.W.2d. 265 (Tex. 1991). When one person is under a duty, created by law or contract, to act on or give advice for the benefit of another within the scope of the relationship, that person has a fiduciary relationship with the other person. *Id.*

Whether Plaintiff and Defendant have a formal fiduciary relationship is a question of law. *Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 605 (Tex. App. - Houston [14th Dist.] 2008, n.p.h.).

16

In 1959 Congress enacted the Labor Management Reporting and Disclosure Act ("LMRDA") as a result of congressional findings of widespread corruption, breaches of trust, and disregard of the individual rights of employees. *LMRDA § 2b, 29 U.S.C. § 401(b) (1970)*. The Act provides union members with a general "bill of rights," election safeguards, trusteeship regulations, and places detailed financial reporting and disclosure requirements on unions, employers, and union officials. *LMRDA §§ 101-105, 201-211, 301-306, 401-404, 501(a); 29 U.S.C. §§ 411-415, 431-440, 461-466, 481-484, 501(b) (1970)*. Additionally, in a subchapter entitled "Safeguard for Labor Organizations - Fiduciary Responsibility of Officers of Labor Organizations," the Act provides for the continuing judicial supervision of individual union officers in section 501. *LMRDA § 501(a-c)*.

In Section 501(a), the Act states that the persons who are subject to the position of fiduciary are "officers, agents, shop stewards, and other representatives of a labor organization who occupy positions of trust in relation to such organization and its members as a group" *Id.* Further, the LMRDA under § III, "Definitions" in subsection (q) defines "Officer, agent, shop steward, or other representative, when used with respect to a labor organization, as elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried non-supervisory professional staff, stenographic personnel." *LMRDA § III(q) "Defenitions"*

Further, to prove an action for breach of fiduciary duty, the Plaintiff must establish the Defendant breached some fiduciary duty owed to Plaintiff. *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1997). Fiduciary duties do not extend to matters beyond the scope of the underlying relationship of the parties. *Rankin*, at 944.

The scope of the underlying relationship between Plaintiff and Defendants in this matter is specifically enumerated in Section 501(a) of the LMRDA. *29 U.S.C. § 501(a)*. Specifically those duties enumerated to the "officers, agents, shop stewards, and other representatives of a labor organization who occupy positions of trust in relation to such organization and its members as a group ("Fiduciaries")" are required as follows:

(1).    That these [Fiduciaries] hold the organization's money and property solely for the benefit of the organization and its members;

(2).    That these [Fiduciaries] manage, invest, and expend the same in accordance with its constitution and by-laws, and any resolutions of the governing bodies adopted thereunder;

(3).    That these [Fiduciaries] refrain from dealing with the organization as an adverse party or in behalf of an adverse party in any adverse party in any matter connected with their duties;

(4).    That these [Fiduciaries] not hold or acquire any pecuniary or personal interest which conflicts with the interests of the organization; and

(5).    That these [Fiduciaries] account to the organization for any profit received by them in whatever capacity connected with business conducted by them on behalf of the organization.

*LRMDA § 501(a), 29 U.S.C. § 501(a)*

A.    **DEFENDANT CLICK**

A detailed recitation of the facts alleged against Defendant Click are outlined above; however, the only cause of action Plaintiff is alleging against Defendant Click is a breach of fiduciary duty for allegedly misappropriating Union funds.

**ELEMENT 1 - FIDUCIARY RELATIONSHIP**

(1).    **Defendant Click Was NOT in a Position of Fiduciary When He Allegedly Wasted Union Funds Regarding His May14th and 15th Hearings**

In Plaintiff's Original Petition against Defendant Click, Plaintiff alleges, "The events giving rise to Plaintiff's claims begin in late 2012 through early 2013. At that

18

time, Defendant [Click] was an elected official of TWU LOCAL 556 with his primary office in Dallas County, Texas." ("*Defendant's Exhibit 14, pg. 2 § V(6)*").

Plaintiff then goes on to allege that because of "scheduling conflicts" and "other logistical issues," Defendant Click's Article XIX Trial Committee Hearings "needed to be postponed from their original settings on May 14-15, 2013." ("*Defendants' Exhibit 14, pg. 2 § V(10)*").

Plaintiff goes on to further allege that, "sufficient notice of the need for postponement was given to the Defendant [Click]. Rather than acknowledge this necessity, the Defendant [Click] insisted on ordering the expenditure of the time and resources necessary for the Article XIX trial on its originally set dates." ("*id*"). As a result of these allegations, Plaintiff allegedly had to "foot-the-bill" for alleged, "significant time and money [being] wasted". ("*id*").

Plaintiff does not allege any specific dates for their accusations, other than the events giving rise to their claims began in late 2012 through early 2013, and that Defendant Click's First Trial Committee Hearings were held on May 14th and 15th of 2013. From what Defendants can glean from Plaintiff's poorly delineated timeline, is that some time before the May 14th and 15th Trial Committee Hearings, Plaintiff allegedly gave Defendant Click "sufficient notice of the need for postponement." However, Plaintiff does not provide a specific date for when they allegedly informed him of this need.

Nonetheless, Defendants have provided through summary judgment evidence a correspondence dated May 16, 2013 from Cuyler Thompson which reads, "Dear Brothers Click and Lindemann…The Executive Board takes the position that no duly constituted

trial has taken place on these charges, *as they were re-set for hearing on May 10, 2013*, by vote of the Executive Board." ("*Defendants' Exhibit 11*"). The letter further goes on to read, "Notice was given to the Charging Party and the Charged Party of this change of hearing." ("*id*"). Again, nowhere does Plaintiff indicate specifically when it gave this "notice of change" to Defendant Click. However, based on the pleadings and this correspondence from Mr. Thompson we know it had to have allegedly taken place sometime between May 10th, 2013 and May 16, 2013. ("*id*")

In April of 2013, Plaintiff suspended Defendant Click from his duties as 1st Vice President. ("*Defendants' Exhibits 3 and 16*"). Plaintiff relieved Defendant Click of all of his duties incumbent upon his official position as 1st Vice President, and stripped him of all authority. ("*id*"). Plaintiff removed Defendant Click from occupying his position of trust, and took away all substantial authority he held. ("*id*").

As stated above, "Section 501(a) of the LMRDA states that the persons who are subject to the position of fiduciary are "officers, agents, shop stewards, and other representatives of a labor organization who occupy positions of trust in relation to such organization and its members as a group" *Id.* Further, the LMRDA under § III, "Definitions" in subsection (q) defines "Officer, agent, shop steward, or other representative, when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried non-supervisory professional staff, stenographic personnel."

20

Once Defendant Click was suspended from his position as 1st Vice President, and stripped of all his duties and authorities, he no longer was in any fiduciary relationship contemplated under Section 501(a) and subsection (q) of the LMRDA.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Click for alleged "time and money wasting" surrounding his May 14th and 15th Trial Committee Hearings fails as a matter of law because the summary judgment evidence indisputably demonstrates that there is no genuine issue as to any material fact that exists whether Plaintiff and Defendant had a fiduciary relationship. They simply did not.

**(2).** **Defendant Click Was NOT in a Position of Fiduciary When He Allegedly Failed to Vacate Union Offices After Being Removed From His Position as 1st Vice President**.

Plaintiff Judicially admits in its Original Petition against Defendant Click that he "was removed from his official position within TWU LOCAL 556 and has not been reinstated." ("*Defendants' Exhibit 14, pg. 4 - § V (11 and 12)*"). Plaintiff alleges that Defendant "unlawfully occupied Plaintiff's offices for several days and refused to vacate" ("*id*"). However, as Plaintiff Judicially admits in its Original Petition, Defendant Click was "removed from his official position within TWU LOCAL 556 and has not been reinstated." ("*id*"). Assuming arguendo that Defendant Click did in fact "unlawfully occupy Plaintiff's offices," it was not done so in any official capacity as an elected officer, because as Plaintiff judicially admits, he was no longer an officer. ("*id*").

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Click for allegedly "unlawfully occupying Plaintiff's office for several days and refusing to vacate" fails as a matter of law because by Plaintiff's own

21

judicial admissions and the indisputable summary judgment evidence demonstrates, there is no genuine issue as to any material fact that exists as to whether Plaintiff and Defendant had a fiduciary relationship. They simply did not.

**(3).** **Defendant Click Was NOT in a Position of Fiduciary When He Allegedly Misused Union Funds When He Attended an International Conference in London**.

Plaintiff alleges in its Original Petition against Defendant Click that "Lastly, Defendant [Click] continued to misuse Union funds when, after his suspension, Defendant took his wife to London (where TWU International was having a conference) for several days and charged the entire cost of the trip to Plaintiff." ("*Defendants' Exhibit 14, pg. 4 - § V (13)*").

Again, unfortunately due to Plaintiff's poorly delineated timeline in its Original Petition against Defendant Click, it is difficult to know when Defendant went to London. The only indication Plaintiff gives is that it was "after his suspension." ("*id*"). Defendant Click was suspended from all of his 1st Vice Presidential duties and authorities in early April 2013. ("*Defendants' Exhibit 3*")

To sustain a cause of action for breach of fiduciary duty the Plaintiff must show that Defendant was Plaintiff's fiduciary. *Lacy*, at 788. The facts, summary judgment evidence and Plaintiff's own judicial admissions indicating Defendant Click was suspended ("*Defendants' Exhibit 14 and 16*") indisputably show that Defendant Click was not Plaintiff's fiduciary at the time of his trip to London.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Click for allegedly "misusing Union funds to fly to London" fails as a matter of law because by Plaintiff's own judicial admissions and as the indisputable

22

summary judgment evidence demonstrates, there is no genuine issue as to any material fact that exists as to whether Plaintiff and Defendant had a fiduciary relationship. They simply did not.

## ELEMENT 2 - FIDUCIARY DUTY OWED

**(1).** **Plaintiff CANNOT Establish That Defendant Click Owed Plaintiff Any Fiduciary Duty Involving His May 14th and 15th Hearings**.

Defendant again, emphatically reemphasizes that no fiduciary relationship existed between Defendant Click and Plaintiff. However, should the Court find a relationship existed, Defendant would argue as follows:

Section 501(a) has not been addressed very much in the State of Texas, either in Federal or State Court. However, Defendants believe the seminal case in this matter is the 5th Circuit's decisions in *Hoffman v. Kramer, et al*, 362 F.3d 308 (5th Cir. 2004)[2]. *Hoffman* has provided us with the guideline of where allegations of breach of fiduciary duties fall under Section 501 of the LMRDA. *Id*.

The Court in *Hoffman* stated that "the fiduciary obligations imposed are primarily pecuniary in nature-that is, having to do with the custody, control, and use of a union's money and its financial interests or property and the conduct of union officials in relation thereof." *Hoffman v. Kramer, et al*, 362 F.3d 308, 317 n.4 (5th Cir. 2004).

The Court goes on to further state that "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA." *Hoffman, at 322*.

Further, the Court states that "most of these matters are the sort of internal grievances properly left to be worked out via union democratic processes…and not by a

---

[2] Defendants have attached a copy of the *Hoffman v. Kramer* Case for this Court's reference.

23

federal court sitting as a sort of super-review board." *Hoffman,* at 322 (citing *United Food and Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l Union*, 301 F.3d 468, 475 (6th Cir. 2002).

Thus, the Court puts a perspective on where allegations of Section 501 may fall. Ultimately we have a spectrum that ranges from:

Pecuniary Fiduciary Obligations in Nature

To

Disagreements Over Appropriateness of Administrative Actions and Decisions

*Hoffman*, at 322.

Specifically, when deciding the issues in *Hoffman*, the 5th Circuit stated that the allegations against Defendants merely amounted to a "derelict[ion] in the performance of [Defendant's] employment obligations," which did not give rise to a breach of fiduciary duty under Section 501(a) of the LRMDA. *Hoffman,* at 322.

In *Hoffman*, the allegations against Defendants were as follows:

(1).    Defendants conspired to rig the November 1999 election, and Plaintiff sought damages for funds allegedly misused during and as a result of this conspiracy; and

(2).    Defendants were accused of maladministration of the union's affairs, such as allegedly destroying union and budget records, and accepting a plane ride without disclosure.

*Hoffman*, at 319-22.

The Court ruled that no breach of fiduciary duties transpired for allegations under (1) because "the remedy for the defective electoral process is not this suit but the intervention of the Labor Department…and the money spent to re-run the election did not personally benefit the Defendants." *Hoffman,* at 320.

24

Further, the 5th Circuit reasoned that no breach of fiduciary duties transpired for the allegations under (2) because "however stupid and wasteful the former officers' actions may have been, they raise issues of time, attendance, performance and administration - not breach of fiduciary duty. The law confides these concerns to the union membership through the election of officers; in fact, the Defendants have already been replaced on the union's board." *Hoffman*, 321-22.

Here, Plaintiff alleges that Defendant Click "wasted significant time and money" when he allegedly "insisted on ordering the expenditure of the time and resources necessary for the Article XIX trial on its originally set dates, despite sufficient notice that the accusing party would not be able to proceed because of scheduling conflicts and other logistical issues." ("*Defendants' Exhibit 14, pg. 3 § V (10)*").

The best Defendants can glean from this allegation is that Defendant Click allegedly breached subsection (2) "That these [Fiduciaries] manage, invest, and expend the same in accordance with its constitution and by-laws, and any resolutions of the governing bodies adopted thereunder" under Section 501(a) of the LMRDA. *29 U.S.C. 501(a)*.

### (a). Sufficient Notice of Need For Postponement.

As stated above, based on the summary judgment evidence, and viewing the facts and evidence in the light as best as possible for Plaintiff, the absolute earliest Plaintiff could have notified Defendant of the "need for postponement" was May 10, 2013, when Plaintiff allegedly voted to re-set Defendant Click's Hearings. ("*Defendants' Exhibit 11*").

However, the summary judgment evidence produced clearly shows that the first time Defendant Click was ever made aware of any possible reset was that Monday, May 13th, 2013 when he arrived in Dallas the day before his Hearings on the 14th and 15th, wherein he received an email from Oakland based Rep Matt Hettich saying the Hearings were rescheduled. ("*Defendants' Exhibit 3 and 8*").

Sending Defendant an email the day before his Hearing is not sufficient notice.

**(b).** **Defendant Did NOT Insist On Ordering the Expenditure of the Time and Resources Necessary for His Trial Committee Hearings on the 14th and 15th of May, 2013**.

In any event, Plaintiff is under some misguided belief that Defendant Click had any power whatsoever to "order" his Hearings on the 14th and 15th of May, 2013 to move forward on those dates. All the facts and summary judgment evidence clearly show that Defendant Click received a correspondence from Recording Secretary Jannah Dalak dated April 30, 2013. ("*Defendants' Exhibit 3 and 5*"). The letter indicated that Defendant Click had a Trial Committee Hearing set against him on May 14th and 15th of 2013. ("*id*"). Subsequently, Defendant Click attempted to challenge several of the Trial Committee Members; however, he was unsuccessful. ("*Defendants' Exhibit 3 and 7*").

On Monday, May 13th, 2013, Defendant Click got on a plane from Baltimore and flew to Dallas for said Hearings. ("*Defendants' Exhibit 3 and 8*"). On May 13th, 2013, Defendant Click received an email from Matt Hettich, an Oakland based rep telling him that his Hearings had been rescheduled. ("*id*").

26

After reading the email, Defendant Click called the President of the LOCAL 556 Union, Defendant Martin, and inquired if his Hearings had been rescheduled. ("*Defendants' Exhibits 1 and 3*"). Disagreeing with Matt Hettich, and other members of Plaintiff's Executive Board over union policies and what the Constitution stated, Defendant Martin in his Presidential administrative role told Defendant Click that he did not believe that the Plaintiff had any authority to reschedule his Hearings, and thus advised him to show up for the Hearings. ("*Defendants' Exhibit 1 and 3*").

Defendant Click showed up to his Hearings on May 14th and 15th, 2013, where every single person scheduled to be there: Defendants, Defendants' witnesses, the Union attorney, Defenses' counsel, the court reporter, and the Trial Committee Members were all ready to proceed with a Trial Committee Hearing. (*"Defendants' Exhibit 3 and 8"*). Defendant had no reason to believe otherwise that his trial was rescheduled.

At the behest of the Trial Committee Members, and not because Defendant Click "insisted on ordering the expenditure of the time and resources to proceed" his May 14th and 15th Hearings were adjudicated, wherein he was found not guilty of the allegations. ("*Defendants' Exhibits 3, 8 and 10*").

Moreover, the certified transcripts from Defendant Click's May 15th Hearing clearly indicate that the Trial Committee Members deliberated on whether Plaintiff had any authority to reschedule the Hearings, and after deliberation clearly decided, making the decision themselves, that the Trial Committee Hearing would proceed. ("*Defendants' Exhibit 8*"). Not Defendants.

27

The Hearings against Defendant Click took place on May 14th and 15th, 2013 because (1) Plaintiff scheduled his Hearings for those dates, (2) the President of the Local Chapter of the Union told him that his Hearings were not rescheduled; and (3) The Trial Committee Members chosen by Plaintiff to adjudicate the Hearing chose to proceed with the 14th and 15th Hearings.

In no way, shape or form did Defendant Click "insist on ordering the expenditure of the time and resources necessary for the Article XIX trial on its originally set dates despite sufficient notice of any postponement."

**(c).**      **<u>Plaintiffs Allegations Do NOT Rise to Any Level of Breach of Fiduciary Duty Contemplated under § 501(a) of the LRMDA</u>.**

Assuming arguendo that this Honorable Court were to disregard the overwhelming amount of summary judgment evidence and precedence, and believe that the allegations asserted by Plaintiff had any merit, Defendant Click's actions would still not rise to any level of breach of fiduciary duty enumerated under Section 501(a) of the LMRDA.

The Defendants in *Hoffman* were accused of misusing union funds by rigging their November 1999 elections. *Hoffman*, at 320. Similary, Defendant Click in this case is being accused of wasting time and money, or misusing Union funds, to force the Trial Committees on May 14th and 15th to proceed despite some alleged notification otherwise.

In *Hoffman*, the Court found no good cause to proceed on the misuse of union funds because "the remedy for the defective election process [was] not the lawsuit, but the intervention of the Labor Department." *Hoffman*, at 320. Further, the Court in *Hoffman* stated that "The money spent to re-run the elections did not

28

personally benefit the Defendants." *Id*. Further, the Court in *Hoffman* ruled that "the general allegations that officers conducted an illegal election does not state a breach of the duties referred to in § 501(a), although it may violate other provisions of the Act." *Id.*

Just as in *Hoffman*, Plaintiff's allegations that Defendant Click misused union funds by allegedly ordering his Article XIX Trials to move forward despite some alleged notification they were rescheduled, simply does not state a breach of fiduciary duty contemplated under § 501(a) of the LMRDA.

Further, as in *Hoffman*, the money spent on rescheduling and retrying the Hearings on May 24th did not personally benefit Defendant Click in anyway. In fact, it was extremely detrimental to Defendant Click, whereas he was found guilty on the re-trials, and permanently removed from office entirely.

Finally, even if the Court were to believe that Defendant Click "wasted significant time and money," *Hoffman* clearly states that "however stupid and wasteful the former officers' actions may have been, issues of time, attendance, performance and administration are not a breach of fiduciary duty. The law confides these concerns to the union membership through the election of officers; in fact, the Defendants have already been replaced on the union's board." *Hoffman*, 321-22. As in *Hoffman*, Defendant Click was removed form office and replaced.

The allegations against Defendant Click are exactly the kind, which the 5th Circuit identifies as "the sort of internal grievances properly left to be worked

out via union democratic processes…and not by a federal court sitting as a sort of super-review board." *Hoffman, at 322.*

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Click for allegedly "misusing Union funds by wasting significant time and money" surrounding his May 14th and 15th Trial Committee Hearings fails as a matter of fact and law because the summary judgment evidence indisputably demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant breached any fiduciary duty owed to Plaintiff.

**(2).** **Defendant Click Did NOT Breach Any Fiduciary By Allegedly Failing to Vacate Union Offices After Being Removed From His Position as 1st Vice President**.

Again, Defendant maintains that no fiduciary relationship existed between Defendant Click and Plaintiff, after Plaintiff removed him from office as 1st Vice President. However, despite the indisputable summary judgment evidence otherwise, should the Court believe a fiduciary relationship existed, Defendant Click's alleged "failure to vacate Union offices" does not rise to any breach of fiduciary duty under Section 501(a) of the LMRDA.

Taking as true all facts alleged by Plaintiff and viewing them in the light most favorable to Plaintiff, "unlawfully occupying Plaintiff's offices for several days and refusing to vacate until directed to do so by the TWU International President" does not rise to a level of fiduciary duty contemplated under Section 501(a) of the LMRDA.

Assuming arguendo, Defendant Click, in fact refused to vacate Union offices, it was not done so because he was breaching some fiduciary duty, its because they clearly

30

did not agree with the "appropriateness of the administrative actions and decisions" taken against them by Plaintiff. ("*Defendants' Exhibit 3*"). There was a clear disagreement over whether the Executive Board had the authority to remove him from office. ("*id*"). Refusing to vacate the Union offices does not rise to a level of a fiduciary duty owed.

Worst case scenario, Defendant Click's actions amounted to a dereliction of his officer duties. Once again the 5th Circuit in *Hoffman* has stated that "Section 501(a) does not permit derivative actions for dereliction of employment duties." *Hoffman*, at 322.

The 5th Circuit Court in *Hoffman* clearly ruled that "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA's" Section 501(a) breach of fiduciary duties offenses. *Hoffman*, at 322.

Plaintiff's Executive Board made an administrative decision to remove Defendant Click from his 1st Vice President position, after he had already been suspended for nearly two months. ("*Defendant's Exhibits 14 and 16*"). Defendant Click disagreed whether Union policies gave Plaintiff's Executive Board the authority to do so. ("*Defendants' Exhibits 3*").

Thus, even taking as true that Defendant Click mishandled the internal administration of the union by failing to vacate Union offices, as directed by Plaintiff, causing the Union to incur costs; their actions still fall well short of the subject matter contemplated under Section 501(a) of the LMRDA.

Again, even if Plaintiff some how incurred cost for Defendant failing to vacate Union offices, the 5th Circuit's decision in *Hoffman* clearly states, "however stupid and wasteful the former officers' actions may have been, issues of time, attendance,

31

performance and administration" do not fall within the subject matter of Section 501(a) of the LMRDA. *Hoffman*, 321-22.

Even with this Court viewing Plaintiff's allegations in the light most favorable to Plaintiff, at most, Defendant Click's refusal to vacate Union offices amounted to a dereliction of his duties as 1st Vice President because he disagreed with the appropriateness of an administrative Executive Board action telling him to vacate. This simply cannot rise to any level of fiduciary duty owed, and is simply not something contemplated under Section 501(a) of the LMRDA.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendants Click for allegedly "refusing to vacate Union offices" fails as a matter of fact and law because the summary judgment evidence indisputably demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant breached any fiduciary duty owed to Plaintiff.

**(3). Defendant Click Did NOT Breach Any Fiduciary Duty By Flying to London to Attend a TWU International Meeting.**

Again, Defendant maintains that no fiduciary relationship existed between Defendant and Plaintiff when Plaintiff removed him from office as 1st Vice President. However, despite the indisputable summary judgment evidence otherwise, should the Court believe a fiduciary relationship existed, Defendant Click's trip to London does not rise to any breach of fiduciary duty under Section 501(a) of the LMRDA.

As judicially admitted by Plaintiff, prior to the International conference in London, Defendant Click was suspended from his officer position of 1st Vice President. ("*Defendants' Exhibit 14 and 16*"). However, prior to Defendant Click's suspension, TWU International had specifically requested Defendant Click to attend the conference in

London. ("*Defendants' Exhibit 3*"). Moreover, Plaintiff had specifically approved their budget, and the funds to send a representative to London for this conference. ("*id*").

Defendant Click at that time was the Safety Chair of the Local 556 Union, and also, a member of the Cabin Air Quality Board ("CAQB"). ("*id*"). The specific conference in London was the Global Cabin Air Quality Executive Conference, and thus, as Safety Chair and a member of the CAQB at that time, Plaintiff chose to send Defendant Click. ("*id*").

Defendant Click was scheduled to fly to London two days after his suspension. ("*id*"). After being suspended, Defendant Click contacted the TWU International President, Mr. James Little, and local Union President at the time, Defendant Martin, and asked if his attendance in London was still required despite being suspended. ("*id*"). Mr. Little and Defendant Martin both indicated that the entry fee and other expenses had already been purchased and were non-refundable, and told Defendant Click he should still attend the meeting. ("*id*"). Moreover, Defendant Click was not being paid to attend this conference. ("*id*").

It was not until Defendant Click had already arrived in London, and participated fully in an entire day of the conference, until Plaintiff contacted Defendant Click and told him to not attend the conference anymore. ("*id*"). Subsequently, Defendant Click contacted Denver based representative Chris Sullivan to attend on behalf of Plaintiff. ("*id*"). As requested, Defendant Click did not participate in the remainder of the conference, and returned home on his scheduled flight. ("*id*").

Defendant Click's attendance at the International Conference in London does not give rise to any breach of fiduciary duty. Plaintiff specifically budgeted for Defendant

33

Click to attend the International Conference in London. ("*id*"). Plaintiff suspended Defendant Click two days before he was scheduled to leave for London for the conference. ("*Defendant's Exhibit 3 and 14*"). The President of the TWU International specifically told Defendant Click that expenses had been paid, and his attendance was required at the Conference in London. ("*Defendants' Exhibit 3*"). Plaintiff did not inform Defendant Click that his presence was no longer required at the London conference until the second full day of the trip. ("*id*"). As soon as Defendant Click was informed he was no longer to attend the conference, another rep was contacted to fill in for him. ("*id*").

Assuming arguendo, taking Plaintiff's allegations as true that Defendant Click was "explicitly warned that because of his suspension his attendance at the conference would be wholly unauthorized [and] despite the warning, Defendant [Click] went to London ...and used Union funds" cannot and does not rise to any level of breach of any fiduciary duty. ("*Defendants' Exhibit 14*").

The 5th Circuit has abundantly determined that "claims generally alleging maladministration of the union's affairs...are either not amenable to monetary damages, for example the alleged destruction of union and budget records or the acceptance of a plane ride without disclosure; or were not for the Defendants' personal benefit. As such they do not appear to fall within the subject matter of Section 501(a) of the LMRDA." *Hoffman*, at 321.

The indisputable facts clearly show that (1) Plaintiff specifically budgeted for Defendant Click to attend the International Conference in London prior to his suspension; (2) Plaintiff used the monetary funds budgeted to purchase Defendant Click's entry fee to the conference, his flight to the conference, and his hotel room during the conference; (3)

Plaintiff chose to suspend Defendant Click 2 days prior to his departure date from the London conference, wherein no other member was selected to fillin; (4) Defendant Click was informed by then Local President Defendant Martin that the expenses were not refundable and he was required to attend despite the suspension; (5) upon being informed on the second day of the conference that he was no longer to attend the conference, Defendant Click did not participate any further and another member filled in; and (6) Defendant Click was in no way compensated or benefited financially from this trip.

Even in the light most favorable to Plaintiff, the facts alleged at most amount to a dereliction of Defendant's duties over the appropriateness of a particular administrative action or decision. The entire basis of this allegation stems from an administrative decision entirely out of the control of Defendant.

The 5th Circuit in *Hoffman*, once again, clearly ruled that "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amendable to suit under the LMRDA"… no matter "however stupid and wasteful the former officer's actions may have been [because] they raise issues of time, attendance, performance and administration - not breach of fiduciary duty." *Hoffman*, at 321-22.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Click for allegedly "attending a conference in London without authorization" fails as a matter of fact and law because the summary judgment evidence indisputably demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant breached any fiduciary duty owed to Plaintiff.

**B.    DEFENDANT MARTIN**

A detailed recitation of the facts alleged against Defendant Martin are outlined above; however, Plaintiff is alleging that Defendant Martin breached a fiduciary duty owed to Plaintiff for allegedly misappropriating Union funds.

**ELEMENT 1 - FIDUCIARY RELATIONSHIP**

**(1).    Defendant Martin Was NOT in a Position of Fiduciary When He Allegedly Failed to Vacate Union Offices After Being Removed From His Official Position**.

Again, Plaintiff judicially admits in its Original Petition against Defendant Martin that he "was removed from his official position within TWU LOCAL 556 and has not been reinstated." ("*Defendants' Exhibit 15, pg. 4 - § V (11 and 12)*"). Again, as with Defendant Click, assuming arguendo that Defendant Martin did in fact "unlawfully occupy Plaintiff's offices for several days and refused to vacate" he was not doing so in any official capacity with any authority to do so. ("*id*"). As Plaintiff judicially admits, Defendant Martin " was removed from his official position within TWU LOCAL 556 and has not been reinstated." ("*id*"). Defendant was no longer in a fiduciary position.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Martin for allegedly "unlawfully occupying Plaintiff's office for several days and refusing to vacate" fails as a matter of law because by Plaintiff's own judicial admissions and indisputable summary judgment evidence demonstrates, there is no genuine issue as to any material fact that exists as to whether Plaintiff and Defendant had a fiduciary relationship. They simply did not.

36

**ELEMENT 2 - FIDUCIARY DUTY OWED**

(1). **Defendant Martin Did NOT Breach Any Fiduciary Duty Allegedly Owed to Plaintiff By Insisting that Defendant Lindemann and Click's Trial Committee Hearings Proceed on May 14th and 15th**.

Plaintiff alleges that Defendant Martin "wasted significant time and money" when he allegedly "insisted on ordering the expenditure of the time and resources necessary for Defendants Lindemann and Click's Article XIX trials on its originally set dates despite sufficient notice that the accusing party would not be able to proceed because of scheduling conflicts and other logistical issues." ("*Defendants' Exhibit 15, pg. 3 § V (10)*").

The best Defendants can glean from this allegation is that Defendant Click allegedly breached subsection (2) "That these [Fiduciaries] manage, invest, and expend the same in accordance with its constitution and by-laws, and any resolutions of the governing bodies adopted thereunder" under Section 501(a) of the LMRDA. *29 U.S.C. 501(a)*.

(a). **Sufficient Notice of Need For Postponement**

As stated above, based on the summary judgment evidence, and viewing the facts and evidence in the light as best as possible for Plaintiff, the absolute earliest Plaintiff could have "directed Defendant [Martin] to reschedule" Defendants Lindemann and Click's Hearings due to a "need for postponement" was May 10, 2013, when Plaintiff allegedly voted to reset the Hearings. ("*Defendants' Exhibit 11*").

However, the summary judgment evidence clearly shows that on May 10th, members of the Executive Board were conferring and deliberating on

37

Defendant Click's objections to the Trial Committee Members. ("*Defendants' Exhibit 1*"). Also, the Executive Board had proposed moving Defendants Lindemann and Click's Hearings to the 24th of May, but had never made a decision. ("*id*").

On Sunday May 12th, the Executive Board finally rendered a 6-5 vote denying Defendant Click's objections, and also, voted to move the Hearings to May 24th. ("*id*").

It wasn't until that Monday the 13th in the afternoon, the day before Defendant Click's May 14th Hearing, when Thompson and Hettich approached Defendant Martin in his office to tell him that the Executive Board voted and wanted him to postpone the Hearings. ("*id*").

Defendant Martin, believing that the Executive Board did not have the authority according to the Constitution to reschedule, and acting in his role as President, as is required by him, contacted the Trial Committee members involved in the matter to inform them that Hearings would proceed on the 14th and 15th of May 2013. ("*id*").

Also, as indicated above, Hettich sent an email to Defendant Click on May 13th informing him his Hearings had been rescheduled. ("*Defendants' Exhibits 1, 3 and 8*"). Defendant Martin received a phone call from Defendant Click, wherein Defendant Martin conveyed to Defendant Click that he did not believe the Executive Board had the authority to reschedule his Hearings and that he needed to show up and proceed with the Hearings. ("*id*").

The next morning, May 14th, 2013, the Executive Board met, wherein the first order of business was to send Defendant Martin to Defendant Click's Hearing and tell the Committee Members that Defendant Click's Hearing was rescheduled. ("*Defendants' Exhibit 1; Defendants' Exhibit 16 - Board Minutes from May 14-17, 2013*"). However, prior to Defendant Martin leaving to inform the Committee Members of this decision, the Executive Board voted to suspend him from his duties as President. ("*id*").

**(b).** **Plaintiffs Allegations Do NOT Rise to Any Level of Breach of Fiduciary Duty Contemplated under § 501(a) of the LRMDA**.

As stated above, Defendant Martin was informed on Monday May 13th, 2013 that the Executive Board voted to reschedule Defendants Lindemann and Click's Hearings scheduled for May 14th and 15th 2013. ("*id.*"). Upon receiving this information, Defendant Martin consulted the Union's Constitution, contacted various members of the International Union, and determined that the Executive Board did not have the authority to reschedule the Hearings by simply voting to have them rescheduled. ("*id*").

Defendant Martin believed he could not reschedule the Hearings because he believed the Constitution for the Transportation Workers Union of the AFL-CIO proscribed only two instances underwhich Article XIX and Article XXI hearings may be rescheduled; (1) if the claimant removes the charges; or (2) the accused successfully challenges the impartiality of a member(s) of the Trial Committee. ("*Defendant's Exhibit 1 and 9*").

Ultimately, the basis for all three of these lawsuits amounts to a disagreement between the Executive Board and the President of the Local Union.

In *Hoffman*, the Court stated that the allegations against Defendants amounted to "disagreements in which Defendants handled the internal administration of the union during their tenure." *Hoffman*, at 321. The Court ruled that "claims generally alleging maladministration of the union's affairs by the Defendants are either not amenable to monetary damages… or were not for the Defendants' personal financial benefit…[and] as such do not appear to fall within the subject matter of Section 501 of the LMRDA." *Hoffman*, at 321.

Taking as true Plaintiff's allegations that Defendant Martin was "directed to reschedule the hearings," and acting as President, based on his belief that the Constitution did not allow for the rescheduling, still "insisted on ordering the expenditure of the time and resources necessary for the Article XIX Hearings on its originally set dates… which result[ed] in significant time and money wasted, causing Plaintiff to foot-the-bill" still does not rise to any level of breach under Section 501(a) of the LMRDA. *Hoffman*, 321-22.

*Hoffman* clearly ruled that, "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA." *Hoffman*, at 322.

Indeed, the Court in *Hoffman* goes on to rule that "most of these matters are the sort of 'internal union grievances' properly left to be worked out via union democratic processes (as they eventually were) and not by a federal court sitting as sort of super-review board." *Hoffman*, at 322; *United Food and Commercial Workers Int'l Local 911*, 301 F.3d at 475.

40

Moreover, the *Hoffman* Court ruled that, "Section 501(a) does not permit these derivative actions for dereliction of employment duties. Disputes over whether elected union officials are adequately performing their employment obligations are matters usually to be worked out within the union and its governing structure and not in federal courts." *Hoffman*, at 322.

Finally, the *Hoffman* Court reasoned that, "however stupid and wasteful the former officers' actions may have been they raise issues of time, attendance, performance and administration - not breach of fiduciary duty." *Hoffman*, at 321.

Thus, even taking as true all of Plaintiff's allegations, at most, Defendant Martin's actions as union President stemmed from a disagreement of the administration of union policy, which assuming he was in the wrong about the policy, could at worst be seen as a dereliction of his Presidential duties. The matter was handled internally when he was suspended from his duties as President, charges were brought against him, and he was ultimately removed as President. ("*Defendants' Exhibit 16*").

Like in *Hoffman*, the matter was handled internally, as it should have been. Moreover, even if Defendant Martin did wrongly "Order the adjudication of the Hearings on their original dates," he in no way benefited financially from it.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Martin for allegedly "misusing Union funds by wasting significant time and money" by "insisting on ordering the May 14th and 15th Trial Committee Hearings" of Defendants Lindemann and Click fails as a matter of fact and law because the summary judgment evidence indisputably

demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant breached any fiduciary duty owed to Plaintiff.

**(2).** **Defendant Martin Did NOT Breach Any Fiduciary Duty By Allegedly Failing to Vacate Union Offices After Being Removed From His Position as President**.

Again, Defendant Marin maintains that no fiduciary relationship existed between himself and Plaintiff, after Plaintiff removed him from office as President. However, despite the indisputable summary judgment evidence otherwise, should the Court believe a fiduciary relationship existed, Defendant Martin's alleged "failure to vacate Union offices" does not rise to any breach of fiduciary duty under Section 501(a) of the LMRDA.

Taking as true all facts alleged by Plaintiff and viewing them in the light most favorable to Plaintiff, "unlawfully occupying Plaintiff's offices for several days and refusing to vacate them until directed to do so by the TWU International President" does not rise to a level of fiduciary duty contemplated under Section 501(a) of the LMRDA.

Assuming arguendo, Defendant Martin, in fact refused to vacate Union offices, it was not done so because he was breaching some fiduciary duty, its because he clearly did not agree with the "appropriateness of the administrative actions and decisions" taken against him by Plaintiff. ("*Defendants' Exhibit 1*"). There was a clear disagreement over whether the Executive Board had the authority to remove Defendant Martin from office. ("*id*"). Refusing to vacate the Union offices simply does not rise to a level of a fiduciary duty owed.

42

Worst case scenario, Defendant Martin's action amounted to a dereliction of his officer duties. Once again the 5th Circuit in *Hoffman* has stated that "Section 501(a) does not permit derivative actions for dereliction of employment duties." *Hoffman*, at 322.

The 5th Circuit Court in *Hoffman* clearly ruled that "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA's" Section 501(a) breach of fiduciary duties offenses. *Hoffman*, at 322.

Plaintiff's Executive Board made an administrative decision to remove Defendant Martin as President. ("*Defendant's Exhibits 15-16*"). Defendant Martin disagreed whether Union policies gave Plaintiff's Executive Board the authority to do so. ("*Defendants' Exhibits 1*").

Thus, even taking as true that Defendant Martin failed to vacate Union offices, as directed by Plaintiff, therefore mishandling the internal administration of the union that removed him, and thereby causing the Union to incur costs; Defendant Martin's actions still fall well short of the subject matter contemplated under Section 501(a) of the LMRDA.

Again, even if Plaintiff some how incurred cost for Defendant failing to vacate Union offices, the 5th Circuit's decision in *Hoffman* clearly states, "however stupid and wasteful the former officers' actions may have been, issues of time, attendance, performance and administration" do not fall within the subject matter of Section 501(a) of the LMRDA. *Hoffman*, 321-22.

Even with this Court viewing Plaintiff's allegations in the light most favorable to Plaintiff, at most, Defendant Martin's refusal to vacate Union offices amounted to a

dereliction of his duties as President because he disagreed with the appropriateness of an administrative Executive Board action. This simply cannot rise to any level of fiduciary duty owed, and is simply not something contemplated under Section 501(a) of the LMRDA.

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Martin for allegedly "refusing to vacate Union offices" fails as a matter of fact and law because the summary judgment evidence indisputably demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant breached any fiduciary duty owed to Plaintiff.

## C.    DEFENDANT LINDEMANN

A detailed recitation of the facts alleged against Defendant Lindemann are outlined above; however, Plaintiff is alleging that Defendant Lindemann breached a fiduciary duty owed to Plaintiff for allegedly misappropriating Union funds.

## ELEMENT 2 - FIDUCIARY DUTY OWED

### (1).    Defendant Lindemann Did NOT Breach Any Fiduciary Duty Allegedly Owed to Plaintiff Involving his May 15th Trial Committee Hearing.

Plaintiff alleges that Defendant Lindemann "wasted significant time and money" when he allegedly "insisted on ordering the expenditure of the time and resources necessary for his Article XIX trial on its originally set dates despite sufficient notice that the accusing party would not be able to proceed because of scheduling conflicts and other logistical issues." ("*Defendants' Exhibit 13, pg. 3 § V (10)*").

The best Defendants can glean from this allegation is that Defendant Lindemann allegedly breached subsection (2) "That these [Fiduciaries] manage, invest, and expend the same in accordance with its constitution and by-laws, and any resolutions of the

44

governing bodies adopted thereunder" under Section 501(a) of the LMRDA. *29 U.S.C. 501(a)*.

**(a).** <u>**Sufficient Notice of Need For Postponement**</u>

As stated above, based on the summary judgment evidence, and viewing the facts and evidence in the light as best as possible for Plaintiff, the absolute earliest Plaintiff could have notified Defendant Lindemann of the "need for postponement" was May 10, 2013, when Plaintiff voted to re-set Defendant Lindemann's Hearings. ("*Defendants' Exhibit 11*").

However, the summary judgment evidence produced clearly shows that the first time Defendant Lindemann was made aware of any possible reset was Wednesday morning, May 15th, 2013, *during* his Trial Committee Hearing. ("*Defendants' Exhibit 2 and 8*"). Plaintiff sent two Board Members to interrupt Defendant Lindemann's Trial Committee Hearing the morning of May 15th, 2013 to inform everyone there that the Hearings were rescheduled. ("*id*"). That was the first time Defendant Lindemann had heard about his Hearing being rescheduled. ("*id*").

Telling someone their Trial Committee Hearing had been rescheduled *during* that Hearing does not come anywhere close to being "sufficient notice."

**(b).** <u>**Defendant Did NOT Insist on Ordering the Expenditure of the Time and Resources Necessary for His Trial Committee Hearing on the 15th of May 2013**</u>.

Again, Plaintiff is under some misguided belief that Defendant Lindemann had any power whatsoever to "order" his Hearing on the 15th of May, 2013 to proceed. All the facts and summary judgment evidence clearly show that

45

Defendant Lindemann received a correspondence from Recording Secretary Jannah Dalak dated April 30, 2013. ("*Defendants' Exhibit 2 and 6*"). The letter indicated that Defendant Lindeman had a Trial Committee Hearing set against him on May 15th of 2013. ("*id*").

As expected, Defendant Lindemann showed up to his Hearing on May 15th, 2013, where every single person scheduled to be there: Defendants, Defendants' witnesses, the Union attorney, Defenses' counsel, the court reporter, and the Trial Committee Members were all ready to proceed with a Trial Committee Hearing. (*"Defendants' Exhibit 2 and 8"*). Defendant had no reason to believe otherwise that his trial was rescheduled.

That morning as the Trial Committee Members commenced proceedings, Plaintiff sent two individuals to interrupt the Hearings and inform everyone that the Hearings had been rescheduled. ("*id*"). That was the first time Defendant Lindemann was ever made aware that Plaintiff was trying to reschedule his Hearing. ("*id*").

At the behest of the Trial Committee Members, and not because Defendant Lindemann "insisted on ordering the expenditure of the time and resources to proceed," his May 15th Hearing as adjudicated; wherein he was found not guilty of the allegations against him. ("*id*").

Moreover, the certified transcripts from Defendant Lindemann's May 15th Hearing clearly indicate that the Trial Committee Members deliberated on whether Plaintiff had any authority to reschedule the Hearings, and after said deliberation the Trial Committee Members clearly decided, making the decision

themselves, that the Trial Committee Hearing would proceed. ("*Defendants' Exhibit 8*").

The Hearing against Defendant Lindemann took place on May 15th, 2013 because (1) Plaintiff scheduled his Hearing for that date, (2) Prior to his May 15th Trial commencing, he had not been informed by anyone that his Hearing was being rescheduled; (3) The morning of his Hearing was the first time Defendant Lindemann had ever been made aware that his Hearing was being rescheduled and (4) The Trial Committee Members, chosen by Plaintiff to adjudicate the Hearing, themselves chose to proceed with the May 15th Hearing believing that Plaintiff had no authority to reschedule it.

In no way, shape or form did Defendant Lindemann "insist on ordering the expenditure of the time and resources necessary for the Article XIX trial on its originally set dates despite sufficient notice of any postponement."

**(c).** **Plaintiff's Allegations Do NOT Rise to Any Level of Breach of Fiduciary Duty**.

In any event, assuming arguendo that this Honorable Court were to disregard the overwhelming amount of summary judgment evidence and precedence, and believe that the allegations asserted by Plaintiff had any merit, Defendant Lindemann's actions would still not rise to any level of breach of fiduciary duty enumerated under Section 501(a) of the LMRDA.

In *Hoffman*, the Defendants were accused of misusing union funds by rigging their November 1999 elections, *Hoffman*, at 320. Similarly, Defendant Lindemann in this case is being accused of wasting time and money, or misusing

Union funds, to force the Trial Committees on May 15th to proceed despite some alleged notification otherwise.

In *Hoffman*, the Court found no good cause to proceed on the misuse of union funds because "the remedy for the defective election process [was] not the lawsuit, but the intervention of the Labor Department." *Hoffman*, at 320. Further, the Court in *Hoffman* stated that "The money spent to re-run the elections did not personally benefit the Defendants." *Id*. Finally, the Court in *Hoffman* ruled that "the general allegations that officers conducted an illegal election does not state a breach of the duties referred to in § 501(a), although it may violate other provisions of the Act." *Id.*

Just as in *Hoffman*, Plaintiff's allegation that Defendant Lindemann misused union funds by allegedly ordering his Article XIX Trials to move forward, despite some alleged notification they were rescheduled, simply does not state a breach of duty referred to in § 501(a) of the LMRDA.

Further, as in *Hoffman*, the money spent on rescheduling and retrying the Hearing on May 24th did not personally benefit Defendant Lindemann in any way. In fact, it was extremely detrimental to Defendant Lindemann, whereas he was found guilty on the re-trial, and removed from his officer position. ("*Defendants' Exhibit 13*").

Finally, even if the Court were to believe that Defendant Lindemann "wasted significant Union time and money," *Hoffman* clearly states that "however stupid and wasteful the former officers' actions may have been, issues of time, attendance, performance and administration are not a breach of fiduciary duty.

The law confides these concerns to the union membership through the election of officers; in fact, the Defendants have already been replaced on the union's board." *Hoffman*, 321-22. And as in *Hoffman*, Defendant Lindemann was removed from office.

The allegations against Defendant Lindemann are exactly the kind, which the 5th Circuit identifies as "the sort of internal grievances properly left to be worked out via union democratic processes…and not by a federal court sitting as a sort of super-review board." *Hoffman, at 322.*

Thus, Plaintiff's claim of Misappropriation of Union Funds - Breach of Fiduciary Duty against Defendant Lindemann for allegedly "misusing Union funds by wasting significant time and money" surrounding his May 15th Trial Committee Hearings fails as a matter of fact and law because all summary judgment evidence and precedence indisputably demonstrates that there is no genuine issue as to any material fact that exists wherein Defendant Lindemann breached any fiduciary duty owed to Plaintiff.

## VII.

## CONCLUSION

Plaintiff has failed to provide even a mere scintilla of evidence to demonstrate that a genuine issue of material fact exists on each and every one of their causes of action against Defendants Martin, Click and Lindemann. As a matter of law Plaintiff is not entitled to the relief they seek, and moreover, have demonstrated no basis whatsoever, in law or fact, to justify their allegations against Defendants.

By their own admissions, Plaintiff has established that no fiduciary relationship existed between Defendants and Plaintiff, let alone any duty owed. Plaintiff simply fails to even come close to meeting the requirements to overcome summary judgment. Therefore, as a mater of law, Defendants are entitled to summary judgment.

## VIII.

## PRAYER

**A.      Requests For Attorney's Fees Pursuant to T.R.C.P. § 13 & Texas C.P.R.C § 10**

Tex. R. Civ. P. § 13 authorizes the imposition of sanctions against any attorney, a represented party, or both, who filed a pleading that is either (1) groundless and brought in bad faith; or (2) groundless and brought to harass. *Tex. R. Civ. P. § 13*. The rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Tex. R. Civ. P. § 13*.

Similarly, Chapter 10 of the Texas Civ. P. and Rem. Code allows a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. *Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001-.005; Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007). Chapter 10 must show (1) the pleading or motion was brought for an improper purpose; (2) there were no grounds for the legal arguments advanced; or (3) the factual allegations or denials lacked evidentiary support. *Tex. Civ. Prac. & Rem. Code § 10.001; Low,* at 614.

A sanction under Chapter 10 may include ordering a party to pay the reasonable attorney's fees ("*Defendants' Exhibit 17*") incurred by the other party because of the filing of the frivolous pleadings. *Tex. Civ. Prac. & Rem. Code Ann § 10.004(c)(3)*.

For the reasons stated above in Defendants' brief in support of their Traditional Motion for Summary Judgment, Defendants seek relief from this Honorable Court pursuant to the Tex.

R. of Civ. P. § 13 and Tex. Civ. Prac. & Rem. Code §§ 10.001-005. Plaintiff's lawsuits against Defendants are groundless, and have been brought simply to harass them. By their own admissions, Plaintiff had no grounds to bring forth these lawsuits. Plaintiff's allegations lack evidentiary support, as well as any facts or law to justify their advancement of these lawsuits.

WHEREFORE, PREMISES CONSIDERED, Defendants further pray that their Motion for Traditional Summary Judgment be in all things GRANTED, and that all of Plaintiff's claims be dismissed with prejudice. Further, Defendants pray that this Honorable Court award all attorneys fees, costs of court, pre-judgment and post-judgment interests they may so justly be entitled to. And for such other and further relief, both special and general, at law and in equity, to which Defendants my show themselves justly entitled.

Respectfully Submitted,

**NELSON PURSLEY, PLLC**

By:    */s/ John F. Nelson*
DANIEL B. NELSON
State Bar No. 14888470
JOHN F. NELSON
State Bar No. 24074802
4635 Southwest Freeway, Suite 600
Houston, Texas 77027
(O) 713-589-8811
(F) 713-589-7159
*john.nelson@nelsonpursley.com*

ATTORNEYS FOR DEFENDANTS,
STACY MARTIN, CHRIS CLICK,
and JERRY LINDEMANN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded by facsimile and/or regular US mail on all parties and/or attorneys of record **on this the 26th day of November 2014.**

Edward B. Cloutman, III
Edward B. Cloutman, IV
Cloutman & Cloutman
3301 Elm Street
Dallas, Texas 75226

*/s/ John F. Nelson*
JOHN F. NELSON

**CAUSE NO. DC-13-13347**

| | | |
|---|---|---|
| **TRANSPORTATION WORKERS** | § | **IN THE DISTRICT COURT OF** |
| **UNION LOCAL 556,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **STACY MARTIN, CHRIS CLICK,** | § | |
| **AND JERRY LINDEMANN** | § | |
| | § | |
| **Defendants.** | § | **116th JUDICIAL DISTRICT** |

## ORDER GRANTING DEFENDANTS'
## MOTION FOR TRADITIONAL SUMMARY JUDGMENT

ON THIS day came to be heard Defendants STACY MARTIN, CHRIS CLICK and JERRY LINDEMANN's Motion for Traditional Summary Judgment. After considering the Motion, the response and evidence, if any, this Honorable Court finds that Defendants' Motion should, in all respects, be GRANTED.

It is THEREFORE, ORDERED that Defendant STACY MARTIN, CHRIS CLICK and JERRY LINDEMANN's Motion for Traditional Summary Judgment is GRANTED.

SIGNED on this the _____ day of _____, 2014.

_____
JUDGE PRESIDING

FILED
DALLAS COUNTY
3/13/2015 3:08:48 PM
FELICIA PITRE
DISTRICT CLERK

Lantz Sandra

**CAUSE NO. DC-13-13347**

| | | |
|---|---|---|
| **TRANSPORTATION WORKERS** | § | **IN THE DISTRICT COURT OF** |
| **UNION LOCAL 556 ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **CHRIS CLICK,** | § | |
| **AND JERRY LINDEMANN** | § | |
| | § | |
| **Defendants.** | § | **116th JUDICIAL DISTRICT** |

## MOTION TO MODIFY JUDGMENT

COMES NOW, DEFENDANTS CHRIS CLICK and JERRY LINDEMANN ("Defendants"), and files this, their Motion to Modify Judgment pursuant to Texas Rules of Civil Procedure 329b. Defendants would respectfully show unto this Honorable Court the following:

### I.

### PROCEDURAL HISTORY

1.      On July 14, 2014 Defendants filed their No-Evidence Motion for Summary Judgment.

2.      On November 26, 2014, Defendants filed their Traditional Motion for Summary Judgment.

3.      This Honorable Court set an Oral Hearing for both Defendants' Motions for No-Evidence Summary Judgment and Traditional Summary Judgment for January 16, 2015.

4.      On January 16, 2015, this Honorable Court heard oral arguments on Defendants' Motions for Summary Judgment; however, the Hearing was not concluded and continued for January 22, 2015.

5.      On January 22, 2015, this Honorable Court continued its Oral Hearing on Defendants' Motions for No-Evidence and Traditional Summary Judgment, and this Honorable

1

Court GRANTED Defendants' Motions for Summary Judgment as to Defendants CLICK and LINDEMANN.

6.      However, as of the date of filing this Modification of Judgment, no entry of Judgment or Order has been entered as to the relief entitled to Defendants CLICK and LINDEMANN.

7.      Defendants CLICK and LINDEMANN move this Court to enter Judgment and/or Order as to Defendants' relief herein entitled.

## II.

## ARGUMENTS AND AUTHORITIES

If the judgment did not award a party all the relief it was entitled to, or awarded the other party more relief than it was entitled to, the complaint must be brought to the attention of the trial court in a written motion. *Tex. R. Civ. P. § 329b(g)*.

A party should file a motion to modify the judgment if the court did not award the correct amount of prejudgment interest. If a party does not bring the issue to the attention of the trial court in a motion to modify the judgment or make some other objection that appears on the record, the party cannot raise the issue on appeal. *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 693-94 (Tex. App. - Dallas 1987, writ denied).

A party should file a motion to modify the judgment when the trial court does not award attorneys fees or does not award the correct amount of fees. *Texas Educ. Agency v. Maxwell*, 937 S.W.2d 621, 623 (Tex. App. - Eastland 1997, writ denied); *American Bank v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 178 (Tex. App. - Waco 1991, writ denied).

A party should file a motion to modify the judgment when the judgment does not award costs, awards costs to the wrong party, or does not award the correct amount of costs. *Dawson-Austin v. Austin*, 968 S.W.2d 319 (Tex. 1998).

A party should file a motion to modify the judgment if there is any other error in the judgment. *L.M. Healthcare, Inc. v. Childs*, 929 S.W.2d 442, 443 (Tex. 1996).

On July 14, 2014, Defendants Click and Lindemann filed their No-Evidence Motion for Summary Judgment praying this Honorable Court grant their Motion and requested relief, both special and general, at law and in equity. On November 26, 2014, Defendants filed their Traditional Motion for Summary Judgment praying this Honorable Court to grant their Motion, and pray and requested relief for Attorneys Fees, costs of court, pre and post judgment interest, and any other relief they may so justly be entitled to in law or equity.

On January 22, 2015, this Honorable Court GRANTED Defendants Click and Lindemann's Motions for Summary Judgment; however, no Order or Judgment has been entered as to the relief requested by Defendants Click and Lindemann, and that of which they are entitled.

Moreover, there is long standing precedence that shows a history of policy "permitting union officers who have successfully defended themselves against charges of § 501 of the LMRDA, wherein there is an adequate protection of union officers from baseless litigation." *Kerr v. Shanks*, 466 F.2d 1271, 1277 (9th Cir. 1972).

Citing *Holdeman v. Sheldon*, where the 2nd Circuit originally held that there is a policy in place "permitting a union to reimburse a Defendant if he is successful in his defense…[which] provides sufficient financial protection of union officials against nuisance suits." *Holdeman v. Sheldon*, 311 F.2d 2, 3 (2nd Cir. 1962); *See also, McNamara, et al v. Johston, et al.*, 522 F.2d

1157, 1167 (7th Cir. 1975)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); *See also, Gabauer, et al v. Woodcock, et al.,* 425 F.Supp 1, 2 (E.D. Missouri 1976)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); *See also, Mulligan v. Parker*, 805 F.Supp 592, n. 4 (ND Illinois 1992) quoting *Holdeman* ("The policy of permitting the union to reimburse the officers for successful defense provides sufficient financial protection of the officers against harassing lawsuits.")

Therefore, Defendants Click and Lindemann are entitled to the relief requested, and move this Honorable Court to modify the Judgment in this matter to award for the said relief of which they are so justly entitled.

### III.

### RELIEF REQUESTED

A.     This Honorable Court enter Order of Judgment GRANTING Defendants Click and Lindemann's No-Evidence and Traditional Motions for Summary Judgment.

B.     Defendants CLICK and LINDEMANN be entitled to pre and post judgment interest accruing at a rate of 5%.

C.     Defendants CLICK and LINDEMANN be entitled to all court costs attributable to each of them.

4

D.    Defendants CLICK and LINDEMANN be entitled to their uncontested reasonable attorneys fees. ("*See attached herein, Exhibit 17 of Defendants Traditional Motion for Summary Judgment - Defendants' Uncontested Affidavit for Attorneys' Fees*").

E.    Defendants CLICK and LINDEMANN request and pray for any other and further relief of which they may so be justly entitled.

WHEREFORE, premises considered, Defendants CHRIS CLICK and JERRY LINDEMANN pray this Court GRANT their Motion for Modification of Judgment, and award them all relief herein requested of which they are so justly entitled, and for any other and further relief that this Honorable Court may deem appropriate.

Respectfully Submitted,

**NELSON PURSLEY, PLLC**

By:    */s/ John F. Nelson*
       DANIEL B. NELSON
       State Bar No. 14888470
       JOHN F. NELSON
       State Bar No. 24074802
       4635 Southwest Freeway, Suite 600
       Houston, Texas 77027
       (O) 713-589-8811
       (F) 713-589-7159
       *john.nelson@nelsonpursley.com*

ATTORNEYS FOR DEFENDANTS, CHRIS CLICK and JERRY LINDEMANN

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded by facsimile and/or regular US mail on all parties and/or attorneys of record **on this the 13th day of March 2015.**

    Edward B. Cloutman, III
    Edward B. Cloutman, IV
    Cloutman & Cloutman
    3301 Elm Street
    Dallas, Texas 75226

                                      */s/ John F. Nelson*
                                        JOHN F. NELSON

| | | |
|---|---|---|
| **TRANSPORTATION WORKERS** | § | **IN THE DISTRICT COURT OF** |
| **UNION LOCAL 556,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **CHRIS CLICK AND** | § | |
| **JERRY LINDEMANN** | § | |
| | § | |
| **Defendants.** | § | **116th JUDICIAL DISTRICT** |

## FINAL JUDGMENT

This Honorable Court having considered all the pleadings, evidence, and arguments herein is of the opinion that Defendants' CHRIS CLICK and JERRY LINDEMANN's Motion to Modify should be GRANTED.

Therefore, it is ORDERED, ADJUDGED and DECREED that Final Judgment is awarded to Defendants CHRIS CLICK and JERRY LINDEMANN, as follows:

(A).     Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all pre and post judgment interest accruing at a rate of 5%.

(B).     Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all costs of the court of which are attributable to each Defendant in the amount of $_____.____

(C).     Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to their uncontested attorneys fees in the amount of Forty Four Thousand Three Hundred Seventy-One Dollars and nineteen cents ($44,371.19).

_____

JUDGE PRESIDING

# EXHIBIT

# 17

## CAUSE NO. DC-13-13347

| | | |
|---|---|---|
| TRANSPORTATION WORKERS UNION LOCAL 556, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| STACY MARTIN, CHRIS CLICK, AND JERRY LINDEMANN | § § § | |
| Defendants. | § § | 116th JUDICIAL DISTRICT |

## AFFIDAVIT IN SUPPORT OF ATTORNEYS' FEES

| | | |
|---|---|---|
| STATE OF TEXAS | § § | |
| COUNTY OF HARRIS | § | |

BEFORE ME, the undersigned authority, on this day personally appeared JOHN F. NELSON who being first duly sworn, stated as follows:

1.    "My name is John F. Nelson. I am an attorney in the above-styled and numbered Cause for and on behalf of Defendants, Stacy Martin, Chris Click and Jerry Lindemann. I am over eighteen (18) years of age and am fully competent and duly authorized to make this Affidavit, which facts are true and correct.

2.    I am an attorney duly licensed by the State of Texas. I am currently practicing out of Houston, Harris County, Texas. I am familiar with the fees charged by attorneys in and around Dallas County, Texas, for services of a similar nature to those performed herein.

3.    Defendants Stacy Martin, Chris Click and Jerry Lindemann have retained the law firm of NELSON PURSLEY, PLLC to represent them in the instant suit brought against them by Transportation Workers Union, Local 556, Plaintiff herein.

4.    All legal services performed on behalf of Defendants Stacy Martin, Chris Click and Jerry Lindemann have been reasonable and necessary.

5.    In my opinion, a usual and customary hourly billing rate for Mr. Daniel B. Nelson, a duly licensed attorney in and for the State of Texas for 27 years, should be $375.00, and an hourly billing rate for myself, being duly licensed in and for the State of Texas for 4 years, should be

$275.00. Accordingly, it is my opinion that the sum of Forty-One Thousand Five Hundred and 0/100 Dollars ($41,500.00) is a reasonable and customary fee for the legal services performed in this matter for and on behalf of Defendants in and around Dallas County. In the event this case is appealed to the Court of Appeals an additional Fifteen Thousand and 00/100 Dollars ($15,000.00) would be reasonable and necessary attorneys' fees, and an additional Ten Thousand and 00/100 Dollars ($10,000.00) if this case is appealed to the Supreme Court of Texas would be reasonable and necessary attorneys' fees.

6. In addition, Defendants have expended another Two Thousand Eight Hundred and Seventy-One Dollars and 19/100 ($2,871.19) in reasonable and necessary expenses associated with this litigation.

7. My opinion is based on a number of facts, including without limitation, to the following:

a. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

b. The fee customarily charged in the locality for similar legal services;

c. The amount of time involved;

d. The time limitation imposed by the client and the circumstances;

e. The nature and length of the professional relationship with the client; and

f. The experience of the attorneys performing these services."

8. In November of 2013, Plaintiff filed three separate lawsuits against each Defendant. Since then, Defense counsel has spent in excess of over 150 hours thus far defending Plaintiff's allegations. The foregoing has included, but is not limited to: client meetings, receipt and analysis of pleadings, preparation of defense pleadings, legal research, preparation of motions to the Court, attendance of hearings, document review, mediation attendance, discovery, and trial preparation."

FURTHER AFFIANT SAYETH NOT.

By: _____
JOHN P. NELSON

SUBSCRIBED AND SWORN TO BEFORE ME **on this the 26th day of November, 2014.**

Notary Public in and for
the State of Texas

DANIEL BRYAN NELSON
Notary Public, State of Texas
My Commission Expires
May 06, 2016

FILED
DALLAS COUNTY
3/13/2015 3:08:48 PM
FELICIA PITRE
DISTRICT CLERK

Lantz Sandra

CAUSE NO. DC-13-13347

| | | |
|---|---|---|
| TRANSPORTATION WORKERS UNION LOCAL 556, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| | § | |
| CHRIS CLICK, AND JERRY LINDEMANN | § § § | |
| | § | |
| Defendants. | § | 116th JUDICIAL DISTRICT |

## MOTION TO MODIFY JUDGMENT

COMES NOW, DEFENDANTS CHRIS CLICK and JERRY LINDEMANN ("Defendants"), and files this, their Motion to Modify Judgment pursuant to Texas Rules of Civil Procedure 329b. Defendants would respectfully show unto this Honorable Court the following:

### I.

### PROCEDURAL HISTORY

1. On July 14, 2014 Defendants filed their No-Evidence Motion for Summary Judgment.

2. On November 26, 2014, Defendants filed their Traditional Motion for Summary Judgment.

3. This Honorable Court set an Oral Hearing for both Defendants' Motions for No-Evidence Summary Judgment and Traditional Summary Judgment for January 16, 2015.

4. On January 16, 2015, this Honorable Court heard oral arguments on Defendants' Motions for Summary Judgment; however, the Hearing was not concluded and continued for January 22, 2015.

5. On January 22, 2015, this Honorable Court continued its Oral Hearing on Defendants' Motions for No-Evidence and Traditional Summary Judgment, and this Honorable

1

Court GRANTED Defendants' Motions for Summary Judgment as to Defendants CLICK and LINDEMANN.

6.     However, as of the date of filing this Modification of Judgment, no entry of Judgment or Order has been entered as to the relief entitled to Defendants CLICK and LINDEMANN.

7.     Defendants CLICK and LINDEMANN move this Court to enter Judgment and/or Order as to Defendants' relief herein entitled.

**II.**

**ARGUMENTS AND AUTHORITIES**

If the judgment did not award a party all the relief it was entitled to, or awarded the other party more relief than it was entitled to, the complaint must be brought to the attention of the trial court in a written motion. *Tex. R. Civ. P. § 329b(g)*.

A party should file a motion to modify the judgment if the court did not award the correct amount of prejudgment interest. If a party does not bring the issue to the attention of the trial court in a motion to modify the judgment or make some other objection that appears on the record, the party cannot raise the issue on appeal. *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 693-94 (Tex. App. - Dallas 1987, writ denied).

A party should file a motion to modify the judgment when the trial court does not award attorneys fees or does not award the correct amount of fees. *Texas Educ. Agency v. Maxwell*, 937 S.W.2d 621, 623 (Tex. App. - Eastland 1997, writ denied); *American Bank v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 178 (Tex. App. - Waco 1991, writ denied).

2

A party should file a motion to modify the judgment when the judgment does not award costs, awards costs to the wrong party, or does not award the correct amount of costs. *Dawson-Austin v. Austin*, 968 S.W.2d 319 (Tex. 1998).

A party should file a motion to modify the judgment if there is any other error in the judgment. *L.M. Healthcare, Inc. v. Childs*, 929 S.W.2d 442, 443 (Tex. 1996).

On July 14, 2014, Defendants Click and Lindemann filed their No-Evidence Motion for Summary Judgment praying this Honorable Court grant their Motion and requested relief, both special and general, at law and in equity. On November 26, 2014, Defendants filed their Traditional Motion for Summary Judgment praying this Honorable Court to grant their Motion, and pray and requested relief for Attorneys Fees, costs of court, pre and post judgment interest, and any other relief they may so justly be entitled to in law or equity.

On January 22, 2015, this Honorable Court GRANTED Defendants Click and Lindemann's Motions for Summary Judgment; however, no Order or Judgment has been entered as to the relief requested by Defendants Click and Lindemann, and that of which they are entitled.

Moreover, there is long standing precedence that shows a history of policy "permitting union officers who have successfully defended themselves against charges of § 501 of the LMRDA, wherein there is an adequate protection of union officers from baseless litigation." *Kerr v. Shanks*, 466 F.2d 1271, 1277 (9th Cir. 1972).

Citing *Holdeman v. Sheldon*, where the 2nd Circuit originally held that there is a policy in place "permitting a union to reimburse a Defendant if he is successful in his defense…[which] provides sufficient financial protection of union officials against nuisance suits." *Holdeman v. Sheldon*, 311 F.2d 2, 3 (2nd Cir. 1962); *See also, McNamara, et al v. Johston, et al.*, 522 F.2d

1157, 1167 (7th Cir. 1975)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); *See also, Gabauer, et al v. Woodcock, et al.,* 425 F.Supp 1, 2 (E.D. Missouri 1976)("Union officials charged as defendants in suits [under section 501 of the LMRDA] should retain independent counsel and bear the financial burden of their defense; however, if they prevail, they may properly be reimbursed by the union for the costs of their legal defense."); *See also, Mulligan v. Parker*, 805 F.Supp 592, n. 4 (ND Illinois 1992) quoting *Holdeman* ("The policy of permitting the union to reimburse the officers for successful defense provides sufficient financial protection of the officers against harassing lawsuits.")

Therefore, Defendants Click and Lindemann are entitled to the relief requested, and move this Honorable Court to modify the Judgment in this matter to award for the said relief of which they are so justly entitled.

**III.**

**RELIEF REQUESTED**

A.     This Honorable Court enter Order of Judgment GRANTING Defendants Click and Lindemann's No-Evidence and Traditional Motions for Summary Judgment.

B.     Defendants CLICK and LINDEMANN be entitled to pre and post judgment interest accruing at a rate of 5%.

C.     Defendants CLICK and LINDEMANN be entitled to all court costs attributable to each of them.

4

D.     Defendants CLICK and LINDEMANN be entitled to their uncontested reasonable attorneys fees. ("*See attached herein, Exhibit 17 of Defendants Traditional Motion for Summary Judgment - Defendants' Uncontested Affidavit for Attorneys' Fees*").

E.     Defendants CLICK and LINDEMANN request and pray for any other and further relief of which they may so be justly entitled.

WHEREFORE, premises considered, Defendants CHRIS CLICK and JERRY LINDEMANN pray this Court GRANT their Motion for Modification of Judgment, and award them all relief herein requested of which they are so justly entitled, and for any other and further relief that this Honorable Court may deem appropriate.

Respectfully Submitted,

**NELSON PURSLEY, PLLC**

By:     */s/ John F. Nelson*
        DANIEL B. NELSON
        State Bar No. 14888470
        JOHN F. NELSON
        State Bar No. 24074802
        4635 Southwest Freeway, Suite 600
        Houston, Texas 77027
        (O) 713-589-8811
        (F) 713-589-7159
        *john.nelson@nelsonpursley.com*


        ATTORNEYS FOR DEFENDANTS,
        CHRIS CLICK and JERRY
        LINDEMANN

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been forwarded by facsimile and/or regular US mail on all parties and/or attorneys of record **on this the 13th day of March 2015.**

Edward B. Cloutman, III
Edward B. Cloutman, IV
Cloutman & Cloutman
3301 Elm Street
Dallas, Texas 75226

*/s/ John F. Nelson*
JOHN F. NELSON

| | | |
|---|---|---|
| TRANSPORTATION WORKERS | § | IN THE DISTRICT COURT OF |
| UNION LOCAL 556, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CHRIS CLICK AND | § | |
| JERRY LINDEMANN | § | |
| | § | |
| **Defendants.** | § | **116th JUDICIAL DISTRICT** |

## FINAL JUDGMENT

This Honorable Court having considered all the pleadings, evidence, and arguments herein is of the opinion that Defendants' CHRIS CLICK and JERRY LINDEMANN's Motion to Modify should be GRANTED.

Therefore, it is ORDERED, ADJUDGED and DECREED that Final Judgment is awarded to Defendants CHRIS CLICK and JERRY LINDEMANN, as follows:

(A).    Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all pre and post judgment interest accruing at a rate of 5%.

(B).    Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to all costs of the court of which are attributable to each Defendant in the amount of $_____.____

(C).    Defendants CHRIS CLICK and JERRY LINDEMANN are hereby entitled to their uncontested attorneys fees in the amount of Forty Four Thousand Three Hundred Seventy-One Dollars and nineteen cents ($44,371.19).

_____
JUDGE PRESIDING

7

# EXHIBIT

# 17

## CAUSE NO. DC-13-13347

| | | |
|---|---|---|
| TRANSPORTATION WORKERS<br>UNION LOCAL 556, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| v. | §<br>§ | DALLAS COUNTY, TEXAS |
| STACY MARTIN, CHRIS CLICK,<br>AND JERRY LINDEMANN | §<br>§<br>§ | |
| Defendants. | § | 116th JUDICIAL DISTRICT |

## AFFIDAVIT IN SUPPORT OF ATTORNEYS' FEES

| | |
|---|---|
| STATE OF TEXAS | §<br>§ |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared JOHN F. NELSON who being first duly sworn, stated as follows:

1. "My name is John F. Nelson. I am an attorney in the above-styled and numbered Cause for and on behalf of Defendants, Stacy Martin, Chris Click and Jerry Lindemann. I am over eighteen (18) years of age and am fully competent and duly authorized to make this Affidavit, which facts are true and correct.

2. I am an attorney duly licensed by the State of Texas. I am currently practicing out of Houston, Harris County, Texas. I am familiar with the fees charged by attorneys in and around Dallas County, Texas, for services of a similar nature to those performed herein.

3. Defendants Stacy Martin, Chris Click and Jerry Lindemann have retained the law firm of NELSON PURSLEY, PLLC to represent them in the instant suit brought against them by Transportation Workers Union, Local 556, Plaintiff herein.

4. All legal services performed on behalf of Defendants Stacy Martin, Chris Click and Jerry Lindemann have been reasonable and necessary.

5. In my opinion, a usual and customary hourly billing rate for Mr. Daniel B. Nelson, a duly licensed attorney in and for the State of Texas for 27 years, should be $375.00, and an hourly billing rate for myself, being duly licensed in and for the State of Texas for 4 years, should be

$275.00. Accordingly, it is my opinion that the sum of Forty-One Thousand Five Hundred and 0/100 Dollars ($41,500.00) is a reasonable and customary fee for the legal services performed in this matter for and on behalf of Defendants in and around Dallas County. In the event this case is appealed to the Court of Appeals an additional Fifteen Thousand and 00/100 Dollars ($15,000.00) would be reasonable and necessary attorneys' fees, and an additional Ten Thousand and 00/100 Dollars ($10,000.00) if this case is appealed to the Supreme Court of Texas would be reasonable and necessary attorneys' fees.

6.      In addition, Defendants have expended another Two Thousand Eight Hundred and Seventy-One Dollars and 19/100 ($2,871.19) in reasonable and necessary expenses associated with this litigation.

7.      My opinion is based on a number of facts, including without limitation, to the following:

a.  The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

b.  The fee customarily charged in the locality for similar legal services;

c.  The amount of time involved;

d.  The time limitation imposed by the client and the circumstances;

e.  The nature and length of the professional relationship with the client; and

f.  The experience of the attorneys performing these services."

8.      In November of 2013, Plaintiff filed three separate lawsuits against each Defendant. Since then, Defense counsel has spent in excess of over 150 hours thus far defending Plaintiff's allegations. The foregoing has included, but is not limited to: client meetings, receipt and analysis of pleadings, preparation of defense pleadings, legal research, preparation of motions to the Court, attendance of hearings, document review, mediation attendance, discovery, and trial preparation."

FURTHER AFFIANT SAYETH NOT.

By: _____
JOHN P. NELSON

SUBSCRIBED AND SWORN TO BEFORE ME **on this the 26th day of November, 2014.**

_____
Notary Public in and for
the State of Texas

DANIEL BRYAN NELSON
Notary Public, State of Texas
My Commission Expires
May 06, 2016

Respectfully Submitted,

Dated this 15th of October, 2015



Christopher Click, Pro Se
Jerry Lindemann, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on October 15th, 2015 a copy of the foregoing "APPELLANTS BRIEF ON THE MERITS" was served on the following counsel for Appellee TRANSPORT WORKERS UNION LOCAL 556. Served to

Edward B Cloutman IV

CLOUTMAN AND CLOUTMAN

3301 Elm Street

Dallas, TX 75226